IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TOMMY RAY MAYS II and QUINTON NELSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JON HUSTED, in his official capacity as Secretary of State of Ohio,<br><br>Defendant. | Case No. 2:18-cv-1376<br><br>JUDGE MICHAEL H. WATSON<br>Magistrate Judge Chelsey M. Vascura<br><br>**EXPEDITED TREATMENT REQUESTED**<br><br>**PLAINTIFFS'** *EMERGENCY* **MOTION FOR TEMPORARY RESTRAINING ORDER AND PROPOSED ORDER AND MEMORANDUM IN SUPPORT**<br><br>**CLASS ACTION** |

Plaintiffs, through their counsel, respectfully move this Court, pursuant to Fed. R. Civ. P. 65, local civil rule 65.1, and for the reasons contained in the Memorandum of Law being submitted herewith, for an emergency temporary restraining order to prevent individuals who are detained in Ohio jails, but eligible to vote, from being disenfranchised in the general election scheduled for November 6, 2018. Defendant will be provided actual notice of this motion.

WHEREFORE, Plaintiffs respectfully request that this Court issue an emergency temporary restraining order:

(1) allowing eligible registered voters who are arrested and held in detention on or after the close of business of the county board of elections on Friday, November 2, 2018, and who will remain in detention through Election Day, to submit requests for emergency absentee ballots through 5:30 P.M. on November 6, 2018;

(2) Requiring Defendant Husted to issue a directive:

1

a. notifying Ohio's eighty-eight county boards of elections that all eligible electors who are registered to vote and are arrested and placed in detention between Friday, November 2, 2018 and Tuesday, November 6, 2018:

   i. have the right to vote; and

   ii. may submit absentee ballot request forms through 5:30 P.M. on November 6, 2018;

b. instructing the county boards of elections to work with the sheriffs of their county to guarantee that:

   i. late-jailed detainees are informed that they can cast a ballot;

   ii. emergency absentee ballot applications are made available to these detainees;

   iii. jails transmit the applications expeditiously, so that anyone who applies for an absentee ballot is able to cast one; and

   iv. detainees receive absentee ballots in time and completed ballots are transmitted to election officials in time to be counted;

(3) in the alternative, ordering that the individually named Plaintiffs in this action be provided the opportunity to vote on November 6, 2018. Defendant shall direct the Montgomery County Board of Elections to deliver emergency absentee ballots to Plaintiffs at the Montgomery County Jail or direct the Montgomery County Board of Elections to coordinate with the Montgomery County Sheriff to ensure supervised transportation of Plaintiffs to their polling location.

Dated: November 6, 2018

Mark P. Gaber*
Danielle M. Lang*
Jonathan M. Diaz*†
CAMPAIGN LEGAL CENTER
1411 K St. NW, Ste. 1400
Washington, DC, 20005
(202) 736-2200
mgaber@campaignlegalcenter.org
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org

Locke E. Bowman*
Alexa Van Brunt*
Laura C. Bishop*
RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER
NORTHWESTERN PRITZKER SCHOOL OF LAW
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-1271
l-bowman@law.northwestern.edu
a-vanbrunt@law.northwestern.edu
laura.bishop@law.northwestern.edu

Respectfully submitted,

*/s/ Naila S. Awan*
Naila S. Awan, Trial Attorney (0088147)
DĒMOS
80 Broad Street, 4th Floor
New York, NY 10004
(212) 485-6055
nawan@demos.org

Chiraag Bains*‡
DĒMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001
(202) 864-2746
cbains@demos.org

*Attorneys for Plaintiffs*

**motions for admission* pro hac vice *forthcoming*
†*admitted to practice only in New York, supervision by Danielle Lang, a member of the D.C. Bar*
‡*admitted to practice only in Massachusetts; practice limited pursuant to D.C. App. R. 49(c)(3)*

3

**MEMORANDUM IN SUPPORT**

**INTRODUCTION**

Plaintiffs respectfully submit this memorandum of law in support of their emergency motion for a temporary restraining order requiring Defendant to allow eligible voters who are arrested and held in detention while awaiting trial or serving a misdemeanor sentence to exercise their fundamental right to vote through the emergency absentee ballot procedure currently afforded to eligible voters who experience unforeseen hospitalization. *See* Ohio Rev. Code. § 3509.08(B).

The right to vote is fundamental in American democracy. Under Ohio law, individuals who are held in detention while awaiting trial or serving a misdemeanor sentence do not forfeit their voting rights; however, Ohio makes voting impossible for electors who are arrested after the absentee ballot request deadline, which is several days prior to Election Day, and held through Election Day. Under the current system, eligible voters who are detained by the state are being unconstitutionally denied their fundamental right to vote by Ohio law and policies carried out by Ohio election officials. Ohio's disenfranchisement of these qualified electors violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

As a result, Plaintiffs are entitled to a temporary restraining order: (1) allowing eligible registered voters who are arrested and held in detention after close of business of the county board of elections on Friday, November 2, 2018, and who will remain in detention through Election Day, to submit requests for emergency absentee ballots through 5:30 P.M. on November 6, 2018; (2) requiring Defendant Husted to direct county boards of elections to process these emergency absentee ballot requests from late-jailed individuals; and (3) requiring Defendant to contact county jail officials to ensure that eligible detainees who avail themselves of the emergency absentee ballot procedure are able to receive and submit their ballots in time to be counted in the November

1

2018 Election. In the alternative, Plaintiffs request that the Court enter a temporary restraining order requiring that the individually named Plaintiffs in this action be provided the opportunity to vote on November 6, 2018. Plaintiffs request that the Court order Defendant to direct the Montgomery County Board of Elections to deliver emergency absentee ballots to Plaintiffs at the Montgomery County Jail or direct the Montgomery County Board of Elections to coordinate with the Montgomery County Sheriff to ensure supervised transportation of Plaintiffs to their polling location.

## FACTUAL BACKGROUND

### I. Parties

Plaintiffs Mays and Nelson are U.S. citizens, Ohio residents, and registered voters. *See* Ex. A (Mays Dec.); Ex. B (Nelson Dec.). Plaintiffs were arrested and placed in pretrial detention in the Montgomery County Jail in Dayton, Ohio after the deadline to request a normal absentee ballot had passed and before Election Day—November 6, 2018. *Id.* Plaintiffs will remain in pretrial detention through the close of polls on Election Day. *Id.* Plaintiffs want to vote in the election, but did not vote via in-person or mail absentee ballot prior to their arrests. *Id.* Plaintiffs planned to vote in person on Election Day prior to their arrest. *Id.*

Defendant Jon Husted, the Ohio Secretary of State, is the chief election officer of the state, whose duties include appointing all members of boards of elections, issuing instructions to members of the boards of elections as to the proper methods of conducting elections, preparing rules and instructions for the conduct of elections, and compelling the observance of the requirements of election laws by county officials. Ohio Rev. Code §§ 3501.04; 3501.05(A)–(C), (M).

## II. Pretrial Detainees and Detainees Convicted of Misdemeanors are Eligible to Vote in Ohio.

The Ohio Constitution states that every citizen who meets the residency requirements and timely registers 30 days before an election "has the qualifications of an elector, and is entitled to vote at all elections." Ohio Const. art. V, § 1. Ohio law restricts access to the franchise for individuals convicted of a felony, which renders them "incompetent to be an elector" during their period of incarceration for their felony conviction. Ohio Rev. Code § 2961.01(A)(1)-(2). But individuals who are detained while awaiting trial or while serving a misdemeanor sentence retain the right to vote while in jail. *Id.* § 3509.08; *Fair Elections Ohio v. Husted*, 770 F.3d 456, 458 (6th Cir. 2014).

Normally, Ohio law allows electors who are held in confinement while awaiting trial to access the ballot through Ohio's general absentee ballot procedure. *See* Ohio Rev. Code § 3509.08(C). Section 3509.08 provides that any qualified elector, who, "on account of the elector's confinement in a jail or workhouse . . . awaiting trial on a felony or misdemeanor, will be unable to travel from the elector's home or place of confinement to the voting booth in the elector's precinct on the day of any general, special, or primary election may make application in writing for an absent voter's ballot to the director of the board of elections of the elector's county." *Id.* § 3509.08(A). Electors who choose to vote by absentee ballot in Ohio may submit written absentee ballot applications either in person or by mail; mailed requests must be delivered to the county board of elections by 12:00 p.m. on the third day before an election, and in-person requests must be submitted by the close of business on the Friday before the election.[1] *Id.* § 3509.03(D). Thus,

---

[1] For the 2018 election cycle, the mail-in absentee ballot request deadline was 12:00 p.m. on Saturday, November 3, 2018, and the in-person absentee ballot deadline was close of business on Friday, November 2, 2018.

3

eligible electors who are arrested and placed into custody on the Friday evening before Election Day will be unable to vote using the general absentee ballot provisions; the deadline for in-person submission has already passed, and they will not be able to ensure that a mailed request will be received by the county board of elections before the Saturday noon deadline.

**III.     Ohio Already Provides Access to Emergency Absentee Ballots for Electors Who Experience Unforeseen Hospitalization in the Days Leading Up to the Election.**

Ohio law establishes a special emergency absentee ballot procedure for individuals who are hospitalized (or whose minor children are hospitalized) due to an accident or unforeseeable medical emergency occurring after the deadline to request an absentee ballot has passed. Ohio Rev. Code § 3509.08(B)(1). These late-hospitalized individuals may submit an application for an emergency absentee ballot any time after 12:00 p.m. on the Saturday immediately preceding the election and before 3:00 p.m. on Election Day. *Id*. § 3509.08(B)(2). The applicant can then choose to either have their ballot delivered to the hospital—in-person by two members of the county board of elections if the hospital is in the same county where the individual is a registered elector, or by mail if the individual is hospitalized in another county—or have a member of the applicant's family pick up the ballot and deliver it to the applicant. *Id*. This emergency absentee ballot procedure is available to individuals who cannot physically go to the polls on Election Day due to an unforeseen accident or illness, but no equivalent procedure is made available to those individuals who are arrested and detained during the weekend before Election Day and are thereby similarly prevented from accessing the polls by their confinement by the state.

## LEGAL STANDARD

The standard governing the issuance of a temporary restraining order is the same as that of a preliminary injunction. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). "When a district court is asked to issue a preliminary injunction, it . . . balances four factors . . .

4

(1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction." *Vittitow v. City of Upper Arlington*, 43 F.3d 1100, 1108-1109 (6th Cir. 1995); *see also Workman v. Bredesen*, 486 F.3d 896 (6th Cir. 2007). These four elements are "factors to be balanced, not prerequisites that must be met." *United States v. Contents of Accounts*, 629 F.3d 601, 606 (6th Cir. 2011) (citing *Jones v. City of Monroe*, 341 F.3d 474 (6th Cir. 2003)).

## ARGUMENT

**I.      Plaintiffs Are Likely to Succeed on the Merits of Their Claims**

To succeed on a motion for a temporary restraining order, Plaintiff must first demonstrate a strong likelihood of success on the merits. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007). "When a party seeks a [temporary restraining order] on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("OFA") (citing *Jones v. Caruso*, 569 F.3d 258 (6th Cir. 2009)).

A plaintiff need not prove her case in full at this preliminary stage; "[i]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Tenke Corp.*, 511 F.3d at 543.

**A.	Plaintiffs are likely to succeed on the merits of their claims that Ohio's denial of late-jailed detainees' right to vote violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.**

The right to vote is a "precious and fundamental right." *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 683 (1966); *see also Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 585 (6th Cir. 2006); *OFA*, 697 F.3d at 428. Voting rights are particularly important because of their essential role in protecting all other rights. *OFA*, 697 F.3d at 428; *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008).

Citizens' voting rights are protected by the First and Fourteenth Amendments. *Stein v. Thomas*, 672 F. App'x 565, 569 (6th Cir. 2016); *Harper*, 383 U.S. at 665 ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment."). The Equal Protection Clause protects qualified electors from state actions that arbitrarily treat voters differently or burden the right to vote. *OFA*, 697 F.3d at 428–30. It is not enough for a state to formally allow the right to vote without also ensuring that electors can equally exercise that right—"[e]qual protection applies as well to the manner of its exercise." *League of Women Voters*, 548 F.3d at 477 (quoting *Bush v. Gore*, 531 U.S. 98 (2000)). Because this class of detainees is eligible to vote under Ohio law, these electors have "a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *OFA*, 697 F.3d at 428 (quoting *Dunn v. Blumstein*, 405 U.S. 330 (1972)); *see also O'Brien v. Skinner*, 414 U.S. 524, 528 (1974) (finding a New York absentee ballot law unconstitutional where jail inmates were denied the ability to vote by reason of their confinement and the state's denial of absentee ballot access).

The Supreme Court has "long been mindful that where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them

must be closely scrutinized and carefully confined." *Harper*, 383 U.S. at 670. Because this case involves the outright denial of the right to vote, rather than merely a burden on that right, the Court should apply strict scrutiny and order the requested relief. But even if the Court analyzes the claim through the "undue burden" framework, the result is the same. When evaluating an Equal Protection challenge to state voting regulations, a court must "weigh the asserted injury to the right to vote against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 190 (2008) (quoting *Burdick v. Takushi*, 504 U.S. 428 (1992)). When a state imposes a "severe restriction" on the right to vote, including a complete denial of that right, it must be "justified by a narrowly drawn state interest of compelling importance." *Id*. "However slight [a] burden may appear . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Id.* at 191 (quoting *Norman v. Reed*, 502 U.S. 279 (1992)).

The Court's task in conducting this balancing test is easy when the burden is an outright denial. "[A] law severely burdens voting rights if the burdened voters have few alternate means of access to the ballot," and such a "law impermissibly restricts 'the availability of political opportunity.'" *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir. 1998) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). Indeed, "[t]he hallmark of a severe burden is exclusion or virtual exclusion from the ballot." *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 574 (2016).

Ohio's election law and policies do not provide late-jailed electors with any method of exercising their right to vote. As described above, eligible registered voters who are arrested and held in detention after the general absentee ballot request deadline and who remain in detention through Election Day are unable to vote in-person on Election Day or via absentee ballot. Because

Ohio categorically denies late-jailed detainees the ability to vote, the burden on voting rights is severe; thus, Ohio's justification for its statutory scheme must serve a compelling interest. *See Crawford*, 553 U.S. at 190. Indeed, the Sixth Circuit has recognized that Ohio's current practice deprives late-jailed detainees of the right to vote. In *Fair Elections Ohio*, the court noted that "[t]he practical outcome of the current procedure is that persons jailed after 6:00 P.M. on the Friday before Election Day who are not released in time to vote in person on Election Day and who have not already voted using one of the other absent voter ballot procedures are unable to vote." 770 F.3d at 458.[2] When a state creates a statutory voting scheme that burdens the ability of some voters to exercise their voting rights, the state's justification must be "sufficiently weighty" to justify the scheme. *OFA*, 697 F.3d at 433-34. A "vague interest in the smooth functioning of local boards of elections" is insufficient justification for a discriminatory scheme that effectively denies the franchise to an entire class of eligible electors. *OFA*, 697 F.3d at 434; *see also Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986).

The only conceivable state interest Ohio could articulate is that providing these eligible voters the right to vote would increase the administrative obligations of the state. That is not a sufficient state interest to warrant complete disenfranchisement. *See Carrington v. Rash*, 380 U.S. 89, 96 (1965) ("The right to choose that this Court has been so zealous to protect, means, at the least, that States may not casually deprive a class of individuals of the vote because of some remote administrative benefit to the State."). Indeed, the administrative burden is almost nonexistent here because Ohio law already requires the board of elections to personally deliver ballots to confined voters. Ohio Rev. Code § 3509.08(a). So the board will already being delivering ballots to the jails,

---

[2] The Sixth Circuit held that the organizational plaintiff in *Fair Elections Ohio* lacked standing to pursue the challenge to the state's denial of the right to vote to late-jailed voters. *Id.* at 461. That concern does not arise here, where the suit is brought by actual eligible voters.

8

including potentially on Monday and Tuesday of Election Day; being required to deliver additional ballots for those jailed after the absentee ballot request deadline is not a sufficient interest to warrant the denial of the right to vote. Ohio may not categorically disenfranchise a group of eligible voters because doing so would avoid the administrative task of delivering them ballots.

Moreover, as detailed above, Ohio already has a procedure for use by electors who discover in the days leading up to an election that they are unable to reach the polls due to unforeseen hospitalization. Late-jailed electors could be easily accommodated by granting them access to the procedure available to late-hospitalized electors.[3] The state recognizes that it has a compelling reason to facilitate the provision of ballots to late-hospitalized electors; there is no reason to prevent late-jailed electors from using that procedure and casting their ballots as well. *See OFA*, 697 F.3d at 434.  Certainly, there is no jail security basis for refusing to extend the emergency absentee ballot procedure to detainees. Ohio law already requires that board officials to deliver ballots to in-county detainees and return the ballots to the board for applications received by the general absentee ballot deadline.

The Supreme Court has held that a state's refusal to allow certain groups of pretrial detainees to exercise the right to vote violates the Equal Protection Clause. *O'Brien*, 414 U.S. at 529. In *O'Brien*, the Court observed that pretrial detainees in New York were "under no legal disability impeding their legal right to register or to vote," yet some of them were denied access to absentee ballots or any alternative means of casting their vote. *Id*. at 530. The Court held that such a restriction is "so severe as itself to constitute an unconstitutionally onerous burden on the . . .

---

[3] That provision requires that the emergency absentee ballot be requested by 3:00 P.M. on Election Day. Because of the exigency of this case, Plaintiffs request that the deadline for late-jailed voters affected by any temporary restraining order imposed by the Court be granted until 5:30 P.M. on November 6, 2018 to request emergency ballots for this election.

9

exercise of the franchise." *Id*. In finding the New York voting regime unconstitutional as applied to pretrial detainees who had previously been unable to vote, the Court distinguished its stance in *O'Brien* from its prior decision in *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802 (1969), in which it upheld an Illinois statutory scheme that denied pretrial detainees access to absentee ballots because the plaintiffs in that case failed to establish that they had no alternative method of accessing the ballot. *O'Brien*, 414 U.S. at 529; *McDonald*, 394 U.S. at 807.

Here, as in *O'Brien*, Ohio's election law and policies result in the complete denial of the right to vote by otherwise eligible, registered voters arrested and detained on or after the close of business of the county boards of elections on the Friday preceding the Election and through Election Day. The state provides no mechanism for these people to exercise their fundamental right to vote.

Ohio law also violates the Equal Protection Clause by treating Plaintiffs differently from individuals facing unforeseen medical emergencies. Due to unforeseen events occurring in the days immediately preceding the election, both late-jailed and late-hospitalized voters are physically unable to exercise the right to vote; however, only late-hospitalized voters are provided with access to the polls. This disparate treatment is unrelated to either groups' qualifications to vote and is an arbitrary burden that violates the Equal Protection Clause. *See League of Women Voters of Ohio*, 548 F.3d at 477. This is particularly disturbing because the obstacle to accessing the polls for late-jailed voters is detention by the state itself, and it would likely be even *easier* for Defendant to identify and locate jailed electors than hospitalized electors. Yet, unlike late-hospitalized electors, the state makes no effort to ensure that late-jailed electors are able to exercise their voting rights.

Further, many of these late-detained electors remain detained solely because of their inability to pay bail. Essentially, individuals who are arrested but able to pay for release on bail are permitted to vote in-person, while those who lack the financial means to make bail have no method of accessing the polls. The state has no interest in depriving people of the right to vote based upon their inability to afford bail. Equal Protection prohibits classifications based on wealth status that infringe upon fundamental rights and are not narrowly tailored to serve a compelling government interest. *See Kramer v. Union Free School District No. 15*, 395 U.S. 621 (1969); *Skinner v. State of Okl. ex. rel. Williamson*, 316 U.S. 535 (1942). Detainees' ability to afford bail should not be the decisive factor in determining whether they can exercise the franchise.

Plaintiffs are likely to succeed on the merits of their Equal Protection claim because the effective disenfranchisement for eligible electors held in detention severely burdens the fundamental First Amendment right to vote and arbitrarily denies the vote to this group based on characteristics unrelated to voter qualifications.

## II. In the Absence of a Restraining Order, Plaintiffs Will Suffer Irreparable Harm by Being Forever Denied the Right to Vote in the 2018 Election.

Plaintiffs will suffer irreparable harm if emergency injunctive relief is not granted. A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages. *Tenke Corp.*, 511 F.3d at 550. When constitutional rights are threatened or impaired, irreparable injury is presumed; thus, a restriction on the fundamental constitutional right to vote constitutes irreparable injury. *OFA*, 697 F.3d at 436 (citing *ACLU of Ky. v. McCreary County, Ky.*, 354 F.3d 438, 445 (6th Cir. 2003)). The Sixth Circuit recently stated that a restriction on the fundamental right to vote constitutes irreparable injury. *A. Philip Randolph Inst. v. Husted*, No. 18-3984, --- F.3d ----, 2018 WL 5623929, at *11 (6th Cir. Oct. 31, 2018). This Court has previously stated the same. *Miller*, 348 F. Supp. 2d at 922.

As stated above, Plaintiffs are currently held in pretrial detention in Ohio county jails and will be detained through the close of polls on Election Day, and have no other means of accessing the ballot for the 2018 midterm elections. Absent injunctive relief, Defendant's actions will result in the permanent denial of plaintiffs' fundamental right to vote in the 2018 election, resulting in irreparable injury.

### III. The Balance of Harms Weighs in Favor of Plaintiffs

When Plaintiffs demonstrate "a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment." *Déjà Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 274 F.3d 377, 400 (6th Cir. 2001). Moreover, administrative inconvenience is insufficient to justify denial of the right to vote. *Taylor v. Louisiana*, 419 U.S. 522, 535 (1975); *United States v. Berks Cty., Pa.*, 250 F. Supp. 2d 525, 541 (E.D. Pa. 2003). The issuance of a temporary restraining order in this case will cause no harm to Defendant because emergency procedures already exist for individuals who experience unforeseen circumstances during the weekend before the election that restrict their ability to get to the polls. The injunctive relief Plaintiffs request would simply allow Plaintiffs and other eligible voters who are similarly situated to use those existing procedures to exercise their voting rights.

### IV. The Public Interest Is Served By Ensuring that Plaintiffs Can Exercise Their Right to Vote.

The final factor, the public interest, primarily addresses the impact on non-parties. *Hunter v. Hamilton Cty Bd. of Elections*, 635 F.3d 219, 244 (6th Cir. 2011). In general, "the public has a strong interest in exercising the fundamental political right to vote. That interest is best served by favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful." *OFA*, 697 F.3d at 436-437 (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006); *Hunter*,

635 F.3d at 244) (internal citations and quotations omitted). "The public interest therefore favors permitting as many qualified voters to vote as possible." *OFA*, 697 F.3d at 437.

Moreover, the fact that the Election is imminent does not counsel against issuing injunctive relief where individual voters are going to be disenfranchised. Indeed, courts often issue limited relief to protect the right to vote immediately prior to Election Day. *See, e.g., Emineth v. Jaeger*, 901 F. Supp. 2d 1138 (D.N.D. 2012) (granting preliminary injunction requested on October 25 on October 31 and enjoining the state of North Dakota from enforcing a statute banning electioneering on Election Day); *A. Philip Randolph Institute*, 2018 WL 5623929 (6th Cir. Oct. 31, 2018) (ordering the State to count the ballots cast by certain people who were purged from Ohio's voter rolls based on improper notice); *N.C. State Conference of the NAACP v. N.C. State Bd. of Elections* 1:16CV1274 (M.D.N.C. 2016) (granting a preliminary injunction ordering officials to stop purging voters from the rolls based on a single failed mailing on November 4, 2016); *Pitcher v. Duchess Cty. Bd. of Elections*, No. 7:12-cv-8017 (S.D.N.Y. Oct. 31, 2012) (ordering county election officials on the day before a General Election to register student voters whose voter registrations were rejected because they failed to provide a dormitory name or room number); *Doe v. Walker*, 746 F. Supp. 2d 667, 682 (D. Md. 2010) (issuing a narrow preliminary injunction on October 29, 2010, just four days before election day on November 2, extending the November 12 absentee ballot deadline by ten days for absent uniformed and overseas voters); *Copeland v. Priest*, 4:02-cv-675 (E.D. Ark. 2002) (granting a temporary restraining order on October 30 to restore the voting registration of student voters who were purged due to registering with university addresses); *Spencer v. Blackwell*, 347 F. Supp. 2d 528 (S.D. Ohio 2004) (granting temporary restraining order and preliminary injunction one day before Election Day enjoining the state of Ohio from allowing any challengers other than election judges and other electors into

13

polling places in Ohio on Election Day); *Am. Broad. Cos. v. Heller*, No. 2:06-CV-01268-PMP-RJJ, 2006 WL 3149365 (D. Nev. Nov. 1, 2006) (granting preliminary injunction allowing news organizations to conduct exit polls within 100 feet of Nevada polling places). Ohio may not use the proximity of the Election to categorically disenfranchise a group of eligible voters.

The public interest is served by permitting eligible voters to vote.

## CONCLUSION

For the reasons discussed above, this Court should enter an order providing the relief described above and as outlined in Plaintiffs' Motion for Temporary Restraining Order.

| | |
|---|---|
| Dated: November 6, 2018 | Respectfully submitted, |
| Mark P. Gaber*<br>Danielle M. Lang*<br>Jonathan M. Diaz*†<br>CAMPAIGN LEGAL CENTER<br>1411 K St. NW, Ste. 1400<br>Washington, DC, 20005<br>(202) 736-2200<br>mgaber@campaignlegalcenter.org<br>dlang@campaignlegalcenter.org<br>jdiaz@campaignlegalcenter.org<br><br>Locke E. Bowman*<br>Alexa Van Brunt*<br>Laura C. Bishop*<br>RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER<br>NORTHWESTERN PRITZKER SCHOOL OF LAW<br>375 East Chicago Avenue<br>Chicago, Illinois 60611<br>(312) 503-1271<br>l-bowman@law.northwestern.edu<br>a-vanbrunt@law.northwestern.edu<br>laura.bishop@law.northwestern.edu | */s/ Naila Awan*<br>Naila Awan, Trial Attorney (0088147)<br>DĒMOS<br>80 Broad Street, 4th Floor<br>New York, NY 10004<br>(212) 485-6055<br>nawan@demos.org<br><br>Chiraag Bains*‡<br>DĒMOS<br>740 6th Street NW, 2nd Floor<br>Washington, DC 20001<br>(202) 864-2746<br>cbains@demos.org<br><br>*Attorneys for Plaintiffs*<br><br>\**motions for admission* pro hac vice *forthcoming*<br>†*admitted to practice only in New York, supervision by Danielle Lang, a member of the D.C. Bar*<br>‡*admitted to practice only in Massachusetts; practice limited pursuant to D.C. App. R. 49(c)(3)* |

14

## CERTIFICATE OF SERVICE

      I hereby certify that on November 6, 2018, I served the foregoing on counsel for Defendant via e-mail as indicated below:

Steven Voigt
Office of Ohio Attorney General
steven.voigt@ohioattorneygeneral.gov

Damian Sikora
Office of Ohio Attorney General
damian.sikora@ohioattorneygeneral.gov

Jack Christopher
Deputy Assistant Secretary of State and Legal Counsel
jchristopher@ohiosecretaryofstate.gov

                                                 */s/ Naila S. Awan*
                                                Naila S. Awan, Trial Attorney (0088147)
                                                DĒMOS
                                                80 Broad Street, 4th Floor
                                                New York, NY 10004
                                                (212) 485-6055
                                                nawan@demos.org