**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| TOMMY RAY MAYS II and QUINTON NELSON SR., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 2:18-cv-1376 |
| v. | |
| FRANK LaROSE, in his official capacity as Secretary of State, | JUDGE MICHAEL H. WATSON |
| Defendant. | Magistrate Judge Chelsey M. Vascura |
|  | **CLASS ACTION** |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs respectfully move this court for summary judgment granting declaratory and injunctive relief on all of their claims in the above-captioned case. Plaintiffs are entitled to summary judgment for the reasons set forth in the attached Memorandum of Support filed herewith.

1

Dated: July 22, 2019

Mark P. Gaber*
Danielle M. Lang*
Jonathan M. Diaz*
CAMPAIGN LEGAL CENTER
1411 K St. NW, Ste. 1400
Washington, DC, 20005
(202) 736-2200
mgaber@campaignlegalcenter.org
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org

Locke E. Bowman*
Alexa Van Brunt*
Laura C. Bishop*
RODERICK AND SOLANGE MACARTHUR
JUSTICE CENTER
NORTHWESTERN PRITZKER SCHOOL OF
LAW
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-1271
l-bowman@law.northwestern.edu
a-vanbrunt@law.northwestern.edu
laura.bishop@law.northwestern.edu

Respectfully submitted,

*/s/ Naila S. Awan*
Naila S. Awan, Trial Attorney (0088147)
Kathryn C. Sadasivan*
DĒMOS
80 Broad Street, 4th Floor
New York, NY 10004
(212) 485-6065
nawan@demos.org
ksadasivan@demos.org

Chiraag Bains*†
DĒMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001
(202) 864-2746
cbains@demos.org

*Attorneys for Plaintiffs*

*admitted pro hac vice
†admitted to practice only in Massachusetts;
practice limited pursuant to D.C. App. R. 49(c)(3)*

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Ohio law denies the fundamental right to vote to qualified, registered voters who are arrested and detained in the days immediately preceding an election. Such voters cannot travel to the polls and are denied the ability to vote by absentee ballot. Despite substantial evidence that easily administrable mechanisms are available that would allow late-jailed voters to cast a ballot, they are provided no means by which to participate in the political process. Defendant LaRose (the "Secretary") is, therefore, violating the First and Fourteenth Amendment rights of late-jailed Ohio voters.

## STATEMENT OF FACTS

### I.     Pretrial Detainees and Detainees Convicted of Misdemeanors Are Eligible To Vote in Ohio but Late-Jailed Voters Have No Practical Access to the Ballot.

The Ohio Constitution states that every citizen who meets the residency requirements and timely registers 30 days before an election "has the qualifications of an elector, and is entitled to vote at all elections." Ohio Const. art. V, § 1. Ohio law restricts access to the franchise for individuals convicted of a felony, which renders them "incompetent to be an elector" during their period of incarceration for their felony conviction. Ohio Rev. Code § 2961.01(A)(1)-(2). But individuals who are detained while awaiting trial or while serving a misdemeanor sentence retain the right to vote while in jail. *Id.* § 3509.08; *Fair Elections Ohio v. Husted*, 770 F.3d 456, 458 (6th Cir. 2014); Ex. 2 (Seskes Dep.) at 69:20-70:3.

"Confined" Ohio electors—defined as qualified electors who are unable to vote because they are in jail, hospitalized, or have a minor child who is hospitalized, Ohio Rev. Code § 3509.08(A)-(B)—may access the ballot through Ohio's general absentee ballot procedure, *id.*

§ 3509.08(C). Section 3509.08 of the Ohio Revised Code provides, in part, that any qualified elector, who, "on account of the elector's confinement in a jail or workhouse under sentence for a misdemeanor or awaiting trial on a felony or misdemeanor, will be unable to travel from the elector's . . . place of confinement to the voting booth in the elector's precinct on the day of any general, special, or primary election may make application in writing for an absent voter's ballot to the director of the board of elections of the elector's county." *Id*. § 3509.08(A). Electors who choose to vote by absentee ballot in Ohio may submit written absentee ballot applications either in person or by mail. Ohio law specifies that mailed requests must be delivered to the county board of elections by 12:00 P.M. on the third day before an election (the Saturday preceding a Tuesday election), and that in-person requests for absentee ballots must be submitted by 6:00 P.M. on the Friday before an election.[1] *Id*. § 3509.03(D).

Eligible electors who are arrested and placed into custody on or after the Friday evening before Election Day are unable to vote using the general absentee ballot provisions. The deadline for absentee ballot applications to be submitted in-person will have already passed, and they will not be able to mail an application that will be received by the county board of elections before the Saturday noon deadline. Indeed, as the Secretary's corporate representative testified, such individuals lack *any* mechanism to vote. *See* Ex. 2 (Seskes Dep.) at 105:21-24 (Q: "And are you aware of any other way that person could vote a ballot?" A: "If they're not released by the close of polls, no."); *id.* at 111:22-112:2 (agreeing that "otherwise eligible voters aren't able to cast a ballot solely because they're behind bars on election day"); *id.* at 112:21-113:5 (agreeing that under Ohio law, Named Plaintiffs would have been unable to cast ballots on Election Day); *id.* at

---

[1] For the 2018 election cycle, the mail-in absentee ballot request deadline was 12:00 P.M. on Saturday, November 3, 2018, and the in-person absentee ballot request deadline was 6:00 P.M. on Friday, November 2, 2018.

113:24-114:6 (agreeing that for detention lasting through Election Day, "as a practical matter . . . the majority of people arrested between Friday and Tuesday would not have a means to vote if they did not vote early"); Ex. 3 (SOS_003165). This testimony accords with the Sixth Circuit's assessment. *See Fair Elections*, 770 F.3d at 458 ("The practical outcome of the current procedure is that persons jailed after 6:00 P.M. on the Friday before Election Day who are not released in time to vote in person on Election Day and who have not already voted using one of the other absent voter procedures are unable to vote.").

## II.    Ohio Provides Access to Emergency Absentee Ballots for Electors Who Experience Unforeseen Hospitalization in the Days Leading Up to the Election.

Ohio law establishes a special emergency absentee ballot procedure for "late-hospitalized voters," defined as those "confined" electors who are hospitalized (or whose minor children are hospitalized) due to an accident or unforeseeable medical emergency occurring after the statutory deadline to request an absentee ballot has passed. Ohio Rev. Code § 3509.08(B)(1). These late-hospitalized voters may submit an application for an emergency absentee ballot any time after 12:00 P.M. on the Saturday immediately preceding an election until 3:00 P.M. on Election Day. *Id*. § 3509.08(B)(2); *see also, e.g.*, Ex. 4 (J. Kelly Dep.) at 66:13-71:5 (describing how absentee ballot applications submitted by late-hospitalized voters may be faxed or emailed by hospitals to the board of elections and the applications will be processed). The applicant can then choose to either have their ballot delivered to the hospital—in-person by two members of the county board of elections if the hospital is in the same county where the individual is a registered elector, or by mail if the individual is hospitalized in another county—or have a member of the applicant's family pick up the ballot and deliver it to the applicant.[2] Ohio Rev. Code § 3509.08(B)(2); *see also* Ex. 4

---

[2] Jailed voters are not afforded other accommodations provided to hospitalized or infirm voters. Only hospitalized voters—not detained voters—can have a family member retrieve their absentee ballot for them.

(J. Kelly Dep.) at 66:13-71:5. Applicants affirm their hospitalization was unforeseen on the absentee ballot application; there is no separate inquiry into whether they should have anticipated their potential hospitalization and requested an absentee ballot earlier. *See* Ex. 2 (Seskes Dep.) at 120:6-15; 122:8-19; Ex. 5 (Royer Dep.) at 33:5-25; Ex. 6 (Ohio Sec'y of State Form 11-B).

This emergency absentee ballot procedure is available to individuals who cannot physically go to the polls on Election Day due to an unforeseen accident or illness, but Ohio has no equivalent procedure for those individuals who are arrested and detained during the weekend before Election Day and are thereby similarly prevented from accessing the polls.

### III.   Plaintiffs

Named Plaintiffs Tommy Ray Mays II and Quinton Nelson Sr. are both qualified, registered Ohio voters who planned to vote in the general election held on November 6, 2018 but were arrested in the days prior to—and detained through—Election Day, precluding their ability to vote absentee or at the polls.[3] But for this Court's entry of a Temporary Restraining Order on November 6, 2018, Named Plaintiffs would have been denied their right to vote in the 2018 general election.

Plaintiff Mays has lived in Dayton, Ohio for approximately six years. Ex. 7 (Mays Dep.) at 7:16-17. He registered to vote in Dayton, Ohio about five years ago while visiting a motor vehicle office, *id.* at 50:10-14, and frequently votes in federal elections. *Id.* at 21:14-18.

---

Ex. 30 (SOS_002467); Ex. 2 (Seskes Dep.) at 45:12-46:6. Moreover, the Secretary has taken the position that voters in jail cannot be afforded the same opportunity to vote a provisional ballot—if, for example, their address or name change has not been updated—as other Ohio voters, including infirm voters requesting absentee ballots. Ex. 2 (Seskes Dep.) at 107:19-109:19; *see also* Ex. 31 (Ohio Sec'y of State Form 11-I).

[3] As represented to this court during the Temporary Restraining Order proceedings held on November 6, 2018, Named Plaintiffs were both "being held on $10,000 bail amounts," were "represented by the public defender[,] and met the indigency requirements." ECF No. 20 (Transcript of TRO Hearing), at 7:18-20.

On Saturday, November 3, 2018—three days before the November 2018 general election—Mr. Mays was arrested. ECF No. 3-1 (Mays Decl.), ¶ 5; Ex. 7 (Mays Dep.) at 11:22-12:1 & Errata Pages. Mr. Mays, who was properly registered to vote, had not yet cast a ballot in the 2018 general election and had planned to vote in-person on Election Day. ECF No. 3-1 (Mays Decl.) ¶¶ 3-4. However, his bond was set at an amount higher than what he was able to afford, Ex. 7 (Mays Dep.) at 13:11-15:21, and he was held in pretrial detention through Election Day. ECF No. 3-1 (Mays Decl.) ¶ 5; *see also* Ex. 7 (Mays Dep.) at 17:24-19:19 (describing how Mr. Mays had his arraignment the Monday before the election and did not meet the public defender assigned to his case until a week later). During his criminal proceedings, Mr. Mays was adjudicated indigent and eligible for public defender representation. *See, e.g.*, Ex. 7 (Mays Dep.) at 17:24-19:19.

After his arrest, Mr. Mays asked two corrections officers about whether it was possible to vote in the jail and was told by the officers that "they didn't know how it [(voting in jail)] worked." *See, e.g.*, Ex. 7 (Mays Dep.) at 23:17-25. Mr. Mays never received a clear answer on whether or how he would be able to vote. *Id.* at 11:22-12:4; 20:17-21:11 (Mr. Mays testifying that "when I got into my dorm, I asked an older CO if there was ballots to be signed up for because I knew voting was soon and I usually vote. He couldn't give me a straight answer or couldn't figure out what I was supposed to do."); *id.* at 54:15-55:5 (noting that Mr. Mays was consistently told "ask this person because he would know better" and was unable to get information about how to vote from multiple jail officials). Further, Mr. Mays did not have information on what public official he could contact to try to find out how to exercise his right to vote, *id.* at 55:6-13, he was not eligible to receive visitors for the first few days of his incarceration, *id.* at 52:2-11, he did not have access to internet while in jail, *id.* at 56:11-13, and he did not have a calling card to try and reach people to find out whether or how he could vote from jail, *id.* at 55:21-56:2; 52:20-53:24.

Regardless of whether he had been able to reach anyone, however, Ohio law would have barred Mr. Mays from casting a ballot. *See* Ohio Rev. Code § 3509.08. In order to exercise his fundamental right to vote, Mr. Mays, joined by Mr. Nelson, filed a class action complaint, ECF No. 1, and a Motion for a Temporary Restraining Order, ECF No. 3, seeking to challenge the constitutionality of Ohio's laws that denied them, as well as others similarly situated, access to the ballot.

Plaintiff Nelson went to high school in Dayton, Ohio, Ex. 8 (Nelson Dep.) at 11:7-9, and registered to vote in or around 2012 at a registration booth set up in downtown Dayton. *Id.* at 15:17-17:3. Plaintiff Nelson believes it is important that everyone has the opportunity to vote. *Id.* at 82:18-83:6.

Late in the evening on Friday, November 2, 2018, Mr. Nelson was arrested. *Id.* at 56:20-25. His booking was not completed until November 3rd. *Id.* at 59:7-21. At the time of his arrest, Mr. Nelson was properly registered at the address where he had been living for approximately two years, *see, e.g.*, *id.* at 12:22-13:7; ECF No. 3-2 (Nelson Decl.) ¶¶ 2-3, and had planned to vote in person on November 6, 2018, *id.* at ¶ 4; Ex. 8 (Nelson Dep.) at 79:20-22. The jail's commissary service—necessary for access to phone cards, stamps, or envelopes—was not available before the deadline to request an absentee ballot, Ex. 8 (Nelson Dep.) at 66:13-22; 86:13-87:11, and Mr. Nelson would not have been able to have contact with any visitors to have a family member hand him an absentee ballot application, *id.* at 86:1-12 (Q: "When you have visitors at the jail, [ ] are you allowed to have contact with the visitor?" A: "No." Q: "So if you had asked your father or a family member or a friend to come, would you be in the same physical space as them?" A: "No." Q: "So . . . could they bring you a form and have you fill that out somehow?" A: "No.").

Regardless, the Montgomery County Jail does not permit detainees to give completed absentee ballot applications to visitors; they must be mailed to the Board of Elections. *See* Ex. 9 (Roy Dep.) at 72:13-19 (Q: "[C]ould a friend or family member pick up the completed ballot application from an inmate to hand-deliver it to the Board of Elections?" A: "No. Our policy clearly states they have to seal it, stamp it and send it out through the post office."). No officers discussed opportunities to vote with Mr. Nelson at or after the time of his arrest, there were no absentee ballot applications available, and there was no phonebook, poster, or other materials available to inform Mr. Nelson how he could contact the Montgomery County Board of Elections. Ex. 8 (Nelson Dep.) at 84:11-85:25; *see also* Ex. 9 (Roy Dep.) at 60:13-16 (noting there are no absentee ballot applications available at the jail). At the time of the November 2018 election, Mr. Nelson was being held pre-trial, ECF No. 3-2 (Nelson Decl.) ¶ 5, on charges that were ultimately dropped, Ex. 8 (Nelson Dep.) at 63:24-64:4.

On November 6, 2018—the day of Ohio's most recent general election—this Court issued an order granting relief for Mr. Mays and Mr. Nelson. *See* ECF No. 12. This Court found that: "Named Plaintiffs have standing to bring this action, that there is evidence that Named Plaintiffs are eligible to and have the right to vote, and that there is evidence that Named Plaintiffs have no mechanism by which to cast a ballot." ECF No. 12, at 1-2. It also determined that "failure to grant the requested relief would amount to the denial of Named Plaintiffs' right to vote." *Id.* The Secretary of State's Office informed the Montgomery County Board of Elections about the Court's Order, Ex. 4 (J. Kelly Dep.) at 61:24-62:8; Ex. 2 (Seskes Dep.) at 114:7-10,[4] and the Board of

---

[4] The Secretary of State's office both issued a directive and contacted the Montgomery County Board of Elections to ensure compliance with this Court's Order. Ex. 2 (Seskes Dep.) at 114:7-115:2; Ex. 29, Ohio Sec'y of State Directive 2018-37 (Nov. 6, 2018). The Secretary admitted that Named Plaintiffs would not have been provided any relief without this Court's intervention. Ex. 2 (Seskes Dep.) at 115:3-5 ("Q: Would you have issued such a directive absent an order from the court? A: No.").

Elections passed that message along to the Montgomery County Jail, where the Named Plaintiffs were being held. *Id.* at 61:24-64:7.

Pursuant to this Court's Order, the Montgomery County Board of Elections delivered absentee ballot applications and absentee ballots to Mr. Mays and Mr. Nelson in the Montgomery County Jail on November 6, 2018. *See, e.g.*, ECF No. 13. Both Mr. Mays and Mr. Nelson were presented with absentee ballot applications and ballots in jail; they were given instructions on how to complete them, and were permitted to cast their ballots. Ex. 7 (Mays Dep.) at 44:22-49:14; Ex. 8 (Nelson Dep.) at 72:24-77:24. The jail was able to take Named Plaintiffs to a separate room to vote, the voting process was completed, and everything was returned to the Board of Elections within a quick—approximately 30 minute—timeframe. Ex. 10 (Cavender Dep.) at 15:17-16:1.

## IV.  Proposed Class Members

Each election, voters across Ohio who find themselves in similar positions as Mr. Mays and Mr. Nelson are denied their fundamental right to vote. In order to not only protect their own right to vote, but also the rights of similarly situated Ohioans, Named Plaintiffs filed a motion for class certification on November 6, 2018, seeking to represent:

> All individuals arrested and held in detention in Ohio on or after close of business for the county election board on the Friday prior to the Election who (1) are eligible to vote in Ohio and are registered to do so, (2) did not vote absentee in person or by mail prior to their detention, (3) were provided neither an absentee ballot nor transportation to a voting center nor access to any other method of voting while held in detention, and (4) will remain in detention through close of polls on Election Day.

*See* ECF No. 2-2, at 1 (hereinafter referred to as "late-jailed electors");[5] ECF No. 29, at 1; *see also* ECF No. 20, at 35:5-14 (granting, during the temporary restraining order proceedings, Plaintiffs'

---

[5] The group of eligible voters the state burdens by its election laws is likely even larger than the class defined in this lawsuit, which is conservative by beginning with those arrested after 6 P.M. the Friday before Election Day. As detailed in the Statement of Facts, the inherent restrictions in jail mail policies, communication and visitor policies, the lack of jail policies, and the timing of when some boards of

request that the "class certification motion be deemed filed as of the time it filed" at 10:11 A.M. EST on November 6, 2018).

Plaintiffs' expert Dr. Mark Salling analyzed the number of registered Ohio "voters who (1) were detained after the absentee ballot request deadlines in the November 2012, 2014, 2016, and 2018 general elections and held through Election Day and (2) did not vote in the election during the time of which they were incarcerated." ECF No. 30-1, at 10. He found, using two methods of analysis, that "there are about 1,000 [such] persons who were unable to vote . . . in each of the last four federal general elections." *Id.* at 11.

## V.    Defendant Secretary, Ohio's Chief Election Officer, Has Failed To Provide Late-Jailed Electors Access to the Ballot.

The Secretary is Ohio's "chief election officer," responsible for the "conduct of elections." Ohio Rev. Code § 3501.04. In order to fulfill these duties, Ohio law mandates that the Secretary, among other things: "[a]ppoint all members of boards of elections," "[i]ssue instructions by directives and advisories . . . to members of the boards," "[p]repare rules and instructions for the conduct of elections," and "[c]ompel the observance by [county] elections officers . . . of the requirements of the election laws." *Id.* § 3501.05. As part of his duty as the chief state election officer, the Secretary has issued directives when state law conflicted with federal obligations instructing Ohio's eighty-eight county boards of elections to "go beyond the letter . . . of the Ohio election code." Ex. 2 (Seskes Dep.) at 133:15-137:6; 148:15-149:8; *see also id.* at 22:24-23:3 (noting that Ohio law requires boards of elections to follow instructions received from the Secretary); Ex. 4 (J. Kelly Dep.) at 129:5-19 (noting that board follows directives of Secretary).

---

elections collect absentee ballot applications and deliver absentee ballots, regarding voting, mean that in practice even those arrested days prior to the absentee ballot request deadline would likely have a difficult time requesting and casting a ballot.

The Secretary can—and has—independently issued such directives without a court order. *See, e.g.*, *id.* at 134:2-11. This includes a directive that amended absentee ballot procedures set forth in the Ohio Revised Code in order to avoid a "potential violation" of federal law. *Id.* at 138:19-140:4; 148:2-149:8; *see also* Ex. 11, Ohio Sec'y of State Directive 2017-06 (April 25, 2017). No policies or procedures have been set forth to amend absentee ballot procedures and allow late-jailed voters, like Named Plaintiffs, to cast a ballot.

## VI. Election Officials Do Not Provide Adequate Access to Voting in Jails.

Ohio law not only denies the proposed class of their fundamental right to vote,[6] but the Secretary and other Ohio election officials fail to properly facilitate jail voting—further restricting and denying incarcerated Ohio voters the opportunity to participate in our democracy.

The Secretary and most local boards of elections appear to have no training in place or educational materials available to inform election officials, jail staff, or voters about voting in jail. While the Secretary has both the ability and authority to provide counties with greater guidance on how to provide voting opportunities for eligible voters who are jailed,[7] he has chosen not to exercise that power. *See, e.g.*, Ex. 12 (Def.'s Second Response to Requests for Admission ("2nd RFAs")) No. 17 ("Secretary LaRose admits that his administration has not engaged in public education efforts targeted to county sheriffs or other jail administrators to inform them about the eligibility to vote for incarcerated registered voters."); Ex. 2 (Seskes Dep.) at 63:13-64:10 (noting that Defendant does not "provide logistical instructions on how to vote confined electors"); *id.* at

---

[6] Defendant recognizes that there are qualified Ohio voters who are prevented from voting "solely because they're behind bars on Election Day." *See, e.g.*, Ex. 2 (Seskes Dep.) at 111:22-112:2.

[7] Ex. 2 (Seskes Dep.) at 19:24-20:9; 22:24-23:12 (noting that the Secretary has the authority to: (a) issue memoranda "advising outside entities" such as "[l]aw enforcement [and] sheriff's offices" about "things that might impact elections" and (b) instruct and direct boards of elections "on the conduct of every aspect of elections").

72:12-73:12 (noting that there are no educational or other materials produced by Defendant specific to jailed voters); *id*. at 85:15-19; 88:9-23; 92:18-93:7.

A number of the local election officials deposed have done nothing to fill this gap. Ex. 5 (Royer Dep.) at 34:21-35:3; *id*. at 35:25-36:15; Ex. 4 (J. Kelly Dep.) at 37:2-18, 38:5-14, 48:18-49:8; Ex. 13 (Smith Dep.) at 35:12-14; 36:10-37:2; 48:6-8; *see also* Ex. 2 (Seskes Dep.) at 77:20-78:4 (noting that Defendant is unaware of any boards of election making additional efforts to facilitate voting in jail). Several local officials, in fact, indicated that they were not likely to take additional action to educate voters in the absence of instructions from the Secretary. *See* Ex. 4 (J. Kelly Dep.) at 52:17-53:15 (noting that the county would only follow procedures for voting in jail set by the Secretary, not establish any of its own); Ex. 13 (Smith Dep.) at 32:18-25 (Q: "Would your office be interested in providing more information to the people in jails, to make sure they have access to absentee ballot applications?" A: "I would defer to the Secretary of State's office for that kind of information.").

Further, the Secretary and a number of the boards of elections deposed during the course of this litigation do nothing to facilitate absentee voting in jails. They do not affirmatively provide absentee ballot applications to voters in jails. *See* Ex. 2 (Seskes Dep.) at 74:24-75:13 (noting that, while the Defendant sends absentee ballot applications to electors prior to major elections, he makes no independent effort to deliver applications to voters in jails); *id*. at 76:25-77:5; Ex. 4 (J. Kelly Dep.) at 38:17-39:7. And they do not communicate with jail or corrections officials to ensure qualified individuals experiencing a period of incarceration are able to exercise their right to vote. *See* Ex. 2 (Seskes Dep.) at 77:6-19 (noting that the Secretary has never discussed voting while in jail with sheriffs, jail administrators, or members of the Ohio Department of Corrections); Ex. 4 (J. Kelly Dep.) at 38:5-10; *see also* Ex. 14 (Poland Dep.) at 29:9-14; *see also* Ex. 13 (Smith Dep.)

11

at 45:17-25 (noting that while the Butler County Board of Elections maintains a good relationship with the local jail, the Secretary has done nothing to encourage communications between jail administrators and county boards of elections).

The problems resulting from a lack of training and communication are exacerbated by the fact that elections and jail officials appear to often not understand when and how qualified voters may exercise their right to vote during a period of incarceration. *See, e.g.*, Ex. 2 (Seskes Dep.) at 165:19-167:3 (describing questions about jail voting posed by the Hardin County Board of Elections); *id.* at 169:8-20 (describing questions about jail voting posed by the Tuscarawas County Board of Elections); *id*. at 194:16-195:4 (describing questions posed by the Butler County Board of Elections about voting in jail); *id*. at 209:15-213:14 (describing incorrect information on absentee voting in jails disseminated by the Franklin County Sheriff's Office); *see also* Ex. 15 (email from director of Columbiana Board of Elections stating that the "process for voting inmates of county jails" was a "new one to [him]"); Ex. 16 (email from elections official: "Registered voter is in county jail . . . are they allowed to vote[?]"); Ex. 17 ("[W]e have never had any experience with [jail voting], could you explain to us the correct procedure to follow.").

## VII. Existing Policies and Procedures on Voting While in Jail in Ohio Are Severely Deficient.

The policies and operating procedures in effect in the county jails in Ohio severely complicate the process of exercising the right to vote for electors, including for those who are late-jailed, though also for those who are jailed in the weeks preceding an election. Discovery from multiple counties demonstrate procedures common in county jails that prevent jailed electors from obtaining the information they need to obtain and cast a ballot. These procedures also make it impossible for late-jailed electors to avail themselves of any legal methods of obtaining and returning ballots.

12

A.    **Information on Voting in Jail Is Either Unavailable or Extremely Limited for Detainees.**

Eligible voters in jail have little to no access to accurate information about their options for voting while detained. For example, the Montgomery County Jail does not receive voting information from outside sources, does not provide information to detained electors as to whether they are eligible to vote in jail, does not provide information on election deadlines, does not offer voting guides, and does not have absentee ballot applications available for detained electors. Ex. 9 (Roy Dep.) at 59:6-60:16; 68:2-10; 72:1-11. Similarly, a document request to the Summit County Sheriff surfaced no educational materials on voting for detained citizens. *See* Ex. 18 (Summit County Sheriff's Office Response to Plaintiffs' Subpoena for Documents).

Meanwhile, Franklin County makes voting information available, but the information it provides is wholly inaccurate. Fliers posted in the Franklin County Corrections Center incorrectly state that, to be eligible to vote, detainees must: (1) have already registered to vote in Franklin County, (2) have voted within the past four years, and (3) if they have a previous felony conviction, have had their right to vote restored by a court of common claims.[8] *See* Ex. 20 (Saxon Dep. Ex. 2) at FCSO 098; Ex. 20 (Saxon Dep.) at 12:13-13:6; 64:19-71:3; Ex. 21 (Trowbridge Dep.) at 54:8-22 (noting that this information was played on a loop on the jail television through Election Day). The fliers further impose an inaccurate internal deadline for requesting an absentee ballot of roughly a month prior to the statutory deadline. *See* Ex. 22 (M. Kelly Dep.) at 83:12-84:12 (testifying that the flyer's Oct. 5, 2018 deadline for applying for absentee ballots does not accord with Ohio law).

---

[8] The flier not only erroneously stated that voters must already have been registered before the registration deadline had passed, but there are also no requirements under Ohio law that voters have cast a ballot in the past four years or "that people with felony convictions have their voting rights restored through the Common Pleas Court" in order to be eligible to vote. Ex. 2 (Seskes Dep.) at 209:15-211:15.

**B.      Existing Voting Policies in the Jails Are Complex, Limited, and Inconsistent.**

Ohio jail voting policies—or lack thereof—further restrict the ability of detained electors to vote. The Franklin County Sheriff's Office has no written policies or procedures on voting in Franklin County's jails. Ex. 20 (Saxon Dep.) at 13:24-14:2. Nor does the Butler County Sheriff's Office. Ex. 25 (Fisher Dep.) at 46:2-14. In the Montgomery County Jail, the only written policy for jail voting is that a family member can give jail staff an absentee ballot application for a detainee, which, after being dropped off, would likely get to the detainee within 24 hours. Ex. 9 (Roy Dep.) at 55:24-56:9. The jail has no policies regarding completing or return of such a ballot application other than that friends and family members cannot come by to pick up a completed absentee ballot application or completed absentee ballot and drop it off at the Board of Elections; the application and/or ballot must be delivered by mail. *Id.* at 72:13-19; 74:18-23.

Jail administrators from multiple Ohio counties testified that they themselves do not know the rules regarding detained elector voting, have not been trained in detained elector voting, and are not aware of any such training for either themselves or line level correctional officers at their facilities. *See* Ex. 9 (Roy Dep.) at 47:20-24; Ex. 21 (Trowbridge Dep.) at 29:9-12; 25:20-23; 47:2-48:18; Ex. 20 (Saxon Dep.) at 11:7-11:25; 92:17-23. The Montgomery County Jail does not have anyone on its staff in charge of overseeing the detainee voting process. Ex. 9 (Roy Dep.) at 25:13-31. And, only about seven people out of a detainee population of over 1,000 voted in Franklin County in the November 2018 general election, although more people request absentee ballots than actually end up voting. Ex. 20 (Saxon Dep.) at 89:16-90:7; 95:14-96:21.

In Franklin County, to request an absentee ballot, detainees must fill out a call card, return it to the social worker, then the social worker sends out the application via intra-jail mail. *Id.* at 27:4-28:4. That application is supposed to get back to the detainee overnight after the social worker

has filled the request, but at least two to three times a month, it will take longer to fill the request and return the application to the detainee. Ex. 20 (Saxon Dep.) at 27:20-28:15; Ex. 21 (Trowbridge Dep.) at 26:17-27:22. Applications are never made available in the common areas. Ex. 21 (Trowbridge Dep.) at 94:18-21. The Franklin County Board of Elections does travel to the Franklin County Corrections Centers to provide absentee ballots to detainees who have requested them; however, in past elections, absentee ballot applications have been collected from detainees approximately one week before the deadline, hindering the ability of persons arrested after that date to request and cast a ballot. *See* Ex. 20 (Saxon Dep.) at 31:3-33:15; 37:6-38:14; 76:23-77:19; Ex. 5 (Royer Dep.) at 40:20-24.

### C.    Jail Mail Policies Involve Delays and Long Processing Times.

The delays inherent in jail mailing policies mean that detainees need significant time to request, receive, fill out, and return an absentee ballot for an election. The Secretary has admitted that an absentee ballot sent by mail from a board of elections to a jail on the Saturday before an election (the last day by which an absentee ballot application can arrive at a board of elections and be considered timely) is unlikely to be successful as a practical matter. Ex. 2 (Seskes Dep.) at 90:7-24; Ex 23 (SOS_002562). And the delays inherent in jail mail policies mean that even absentee ballot applications and ballots received earlier can miss electoral deadlines.

In Franklin County, if a detainee wanted to request an absentee ballot after the earlier pick up date set by the Board of Elections, the detainee could use the jail's mail system to send it to the Board—although the sample form that is given to detainees does not show that option, and explicitly states that the application should not be mailed. Ex. 20 (Saxon Dep.) at 35:20-37:5; 46:4-21. Detainees have access to the commissary, which is the only method to buy envelopes and stamps to send mail, on average once every ten days. Ex. 21 (Trowbridge Dep.) at 24:15-26:16.

Voter registration forms, absentee ballot applications, absentee ballots, or other forms would need to be turned in by 3:00 P.M. on Friday to go out by mail that day. *Id*. at 65:2-7.

In Montgomery County, the sheriff testified that jail staff are unwilling or unable to provide a date by which a detainee would need to mail an absentee ballot application in order for that application to arrive at the Board of Elections by noon on the Saturday before an election. Ex. 9 (Roy Dep.) at 47:4-18.  However, the jail's mail policy shows outgoing mail must be handled by three separate jail officials before it is collected for the U.S. Postal Service to pick up, and it can take up for 24 hours for mail to go out. Ex. 24 (Montgomery Cty. Sheriff's Office Jail Manual § 5.26.1); Ex. 9 (Roy Depo.) at 44:21-45:2; 46:18-47:3. Incoming mail can be delayed up to 24 hours for processing, and even longer on weekends and holidays. Ex. 9 (Roy Dep.) at 45:24-46:3. Additionally, detainees must purchase stamps, envelopes, and writing utensils from the commissary to send mail. *Id.* at 43:13-24.

Butler County has similar issues. To request an envelope or stamp, detainees must make a request at a kiosk or barter with another detainee—correctional officers will not provide a stamp or envelope to a detainee if asked. Ex. 25 (Fisher Dep.) at 36:5-16. Commissary is only available twice a week to deliver requested items. *Id.* at 36:22-37:4. For a detainee's outgoing mail to make its way to the postal service by Friday, she or he must turn it in by 6:00 A.M. Friday morning, otherwise it will not be mailed until Monday. *Id.* at 35:10-14.

### D.    Detainees' Access to Information and Communication Resources Is Very Limited.

Limitations on in-person and telephonic communication, as well as delays and costs to access already limited communication options, prevent detainees from accessing information about voting in jails as well as obtaining and completing ballots and applications.

First, Ohio law prohibits internet access for detainees, restricting their ability to learn about election information, board of election policies, or contact information for the board of elections. *See, e.g.*, Ex. 9 (Roy Dep.) at 26:12-22; Ex. 21 (Trowbridge Dep.) at 14:21-23. Second, beyond lack of internet access, detainees often lack other resources that would be needed to identify contact information for, and place a call to, their local board of elections. *See, e.g.*, Ex. 7 (Mays Dep.) at 52:12-53:24 (Plaintiff Mays noting that you need a phone card to make calls, calls cost about 20 cents per minute, and that he did not have funds to purchase a card); Ex. 8 (Nelson Dep.) at 87:2-4 (noting that the cost of a phone card is around 10 dollars); *id.* at 85:13-25 (Plaintiff Nelson testifying that, the Montgomery County Jail did not provide a phone book that could be used to locate the phone number for the Board of Elections, and the Board's phone number was not posted anywhere in the jail). Third, in many jails, visitation is "no contact," meaning that there is glass or another substance between a visiting family member and the detainee, and visitors are not allowed to bring physical objects such as an absentee ballot application with them into the visiting room. Ex. 21 (Trowbridge Dep.) at 18:18-19:12; Ex. 9 (Roy Dep.) at 56:10-15.

Further, the information and facilities available to detainees may not be accessible until after a detainee has been fully booked and integrated into a jail's population. It can take from a few hours to a day between an individual's arrest and booking, and between booking and being integrated into the jail's population. Ex. 9 (Roy Dep.) at 30:5-22, 33:21-35:1. Even after that, detainees may not immediately have access to the resources they would need to request an absentee ballot application and cast an absentee ballot to vote. For example, there can also be a delay after booking before a detainee can deposit money on a phone card, *id.* at 32:13-23, Plaintiff Nelson testified that his access to mail was limited in the days following his arrest and booking, Ex. 8

(Nelson Dep.) at 86:13-24, and Plaintiff Mays testified that he was not allowed visitors his first weekend in jail, Ex. 7 (Mays Dep.) at 16:5-16:10; 51:10-53:20.

**F.      Jails Do Not and Will Not Provide Alternatives to Absentee Voting in Jails.**

Eligible voters, who are detained in Ohio jails through Election Day and denied an absentee ballot in jail, have no alternative means of voting available to them. *See, e.g.*, Ex. 2 (Seskes Dep.) at 105:21-24.  Jail administrators testified that they would not transport detainees to the polls to cast a ballot. Montgomery County Jail officials stated that they could not and would not take detainees to polling places on or before Election Day. Ex. 9 (Roy Dep.) at 80:3-82:9. The official in charge of that jail said that he knew of no other way for detainees to vote other than by absentee ballot. Ex. 9 (Roy Dep.) at 83:15-84:1. The head of the Franklin County Jail testified similarly, explaining that coordinating transport for detainees is very difficult for security reasons, and only done in very limited circumstances. Ex. 21 (Trowbridge Dep.) at 101:10-24. For those and other reasons, Franklin County would not consider transporting detainees to the polls on Election Day. Ex. 21 (Trowbridge Dep.) at 103:17-22.

**VIII.   The Administrative Burden of Facilitating Voting While in Jail Is Far Less than for Hospital Voting.**

Significantly greater effort is required for the county boards of elections to accommodate hospitalized voters than to accommodate jailed voters. For example, Shirley Royer, the Franklin County Board of Elections employee who is tasked with managing jail voting and facilitating hospital voting testified that there are fifteen times as many hospitalized voters than jail voters, and the hospital voting process takes eleven times longer to complete than the jail voting process. Ex. 5 (Royer Dep.) at 68:9-15, 83:12-84:22; *id.* at 83:20-24 (testifying that hospital voting can go from 5 P.M. on Election Day through 4 A.M. the following morning). Plaintiffs' expert, Dr. Salling, confirmed the same. Mapping the geographic distributions of county boards of elections,

hospitals, and jails in Ohio and calculating and comparing the distances from each county's jails and hospitals to the county's Board of Elections, Dr. Salling found that distances from "[Board of Elections] to jails in the same county in Ohio are essentially the same as distances to hospitals in those counties." Exhibit 1 (Salling Proximity Report) at 1-2. Moreover, "assuming that all hospitals and jails in this study have equal chances of having eligible voters who have not voted, the relative burden of travel to these facilities is likely less for jails since there are many fewer of them and the aggregate distance to be covered is less." *Id.* at 2.

Yet, Ohio boards of elections have never been unable to allow late-hospitalized voters to vote on Election Day. Ex. 2 (Seskes Dep.) at 128:5-14; Ex. 14 (Poland Dep.) at 56:14-57:3; Doc 5 (Royer Dep.) at 42:4-13 (testifying that it is "not a burden" to offer hospital voting); *id.* at 44:14-20 (testifying that no applicants for emergency absentee ballots in hospitals have ever had their request to vote unfulfilled). Boards of elections can relatively quickly print a unique ballot for a voter based upon their precinct. Ex. 14 (Poland Dep.) at 72:14-24; Ex. 13 (Smith Dep.) at 95:7-96:15; Ex. 5 (Royer Dep.) at 69:22-70:21 (noting that the Board is able to have all hospital ballots printed and ready for delivery within two hours of the 3 P.M. deadline on Election Day). Indeed, Ms. Royer, the Assistant Nursing Home Director at the Franklin County Board of Elections,[9] noted that if jailed voters were offered the same opportunity to cast emergency absentee ballots as hospitalized voters, the Board would simply shift the day when they deliver absentee ballots to the jail from the Monday before an election to Election Day, and would involve the same two staff members currently processing ballots for jailed voters. Ex. 5 (Royer Dep.) at 82:25-83:11, 84:14-22; *see also* Ex. 14 (Poland Dep.) at 45:20-46:14 (noting that it may require a few additional

---

[9] *See* Ex. 5 (Royer Dep.) at 7:7-10.

temporary staff if emergency hospital voting were extended to late-jailed voters). As Ms. Royer testified:

> Q. So is there anything about the jails as opposed to the hospitals, that would make it such that there would be a reason the board would not be able to, on election day, after 3 p.m., receive the applications, determine the eligibility and print the ballot to deliver to the jail?
>
> A. Not to my knowledge.
>
> Q. In fact, that would require the same number of trips that the board currently takes to the jail, but it would just be on a different day, right? That is, you could do the jail voting all at once on election day after all the applications came in?
>
> A. If that was determined, yes.
>
> Q. If that were the system, that's what you would do? There wouldn't be any additional trips to the jail necessitated?
>
> A. No.

Ex. 5 (Royer Dep.) at 74:7-75:4. Further, the Secretary has not provided any rationale for why late-hospitalized voters are granted different voting rights from late-jailed voters. Ex. 2 (Seskes Dep.) at 116:24-117:4.

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001).[10] Facts are only material when

---

[10] When evaluating cross-motions for summary judgment, the court must evaluate each motion on its merits and view all facts and inferences in the light most favorable to the nonmoving party. *Lenning*, 260 F.3d at 581; *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

their resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As explained herein, there are no genuine disputes of material fact, and Plaintiffs are entitled to summary judgment as a matter of law.

## ARGUMENT

### I.     Named Plaintiffs Have Standing To Bring this Challenge.

As an initial matter, both Plaintiff Mays and Plaintiff Nelson have standing to litigate the present case as class representatives. Both Mr. Mays and Mr. Nelson meet the standing requirements because they: (1) suffered an injury in fact, (2) fairly traceable to the Defendant's conduct, (3) that will likely be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *NEOCH v. Blackwell*, 467 F.3d 999, 1010 (6th Cir. 2006). To begin, the parties agree that Plaintiffs' claims are not mooted by the passing of the 2018 election and their release from jail, because Plaintiffs' claims are capable of repetition yet evading review, and in election cases the plaintiffs do not need to show they will personally be likely to experience the injury again. *See Morse v. Republican Party*, 517 U.S. 186, 235 n.48 (1996); *In re 2016 Primary Election*, 836 F.3d 584, 588 (6th Cir. 2016); *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005); ECF No. 35 (Def.'s Resp. to Pl.'s Mot. for Class Cert.) at 8-9 (agreeing that Plaintiffs' claims are not moot).

Plaintiffs suffered an "injury in fact," an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not "conjectural" or "hypothetical." *Lujan*, 504 U.S at 560. Both Mr. Mays and Mr. Nelson were registered to vote and intended to vote in the November 2018 election. ECF No. 3-1 (Mays Decl.) ¶¶ 2-4; Ex. 8 (Nelson Dep.) at 15:17-17:3; 81:14-22; ECF No. 3-2 (Nelson Decl.) ¶¶ 2-4. Mr. Mays did not vote early, and was arrested the Saturday evening prior to the election, and held through—and beyond—Election Day.

Ex. 7 (Mays Dep.) at 11:22-12:1; 13:2-7; 22:21-23:7; 56:18-20; ECF No. 3-1 (Mays Decl.) ¶ 5. Mr. Mays asked correctional officers how he could vote, but was given no answer. Ex. 7 (Mays Dep.) at 11:22-12:4; 20:17-21:11; 23:17-25. The answer was, however, that he could not: The absentee ballot request deadline had passed, Ohio Rev. Code § 3509.08(A), and as the representative of the Montgomery County Sheriff's Department testified, the jail would not transport voters to the polls on Election Day absent a court order. Ex. 9 (Roy Dep.) at 81:24-82:3.

Mr. Nelson did not vote early, and was arrested late Friday evening prior to the election, and held through—and beyond—Election Day. Ex. 8 (Nelson Dep.) at 12:22-13:7; 52:9-16; 61:12-14; 79:3-6; 79:20-22. ECF No. 3-2 (Nelson Decl.) ¶ 5. Ohio law provides that in-person requests for absentee ballots must be submitted to the board of elections by 6 P.M. on the Friday before the election. Ohio Rev. Code § 3509.03(D). Mr. Nelson was arrested after that time, and thus his only legal mechanism to access the ballot would have been to somehow mail an absentee ballot application on Saturday morning from the jail and have it arrive by noon the same day. *Id.* § 3509.08(A). But the only way Mr. Nelson could obtain a stamp and envelope was through the jail's commissary service, which was not open until after the mail-in application deadline had passed. Ex. 8 (Nelson Dep.) at 66:13-22. Nor would something mailed on Saturday morning arrive at its destination by Saturday noon, even if commissary had been available on Saturday morning. Mr. Nelson thus had no mechanism to vote.[11]

---

[11] The Secretary contends that Mr. Nelson could have had a family member, friend, or someone else give him an absentee ballot application on Saturday morning, have him fill it out, and then deliver it to the Montgomery County Board of Elections by the Saturday noon deadline. *See, e.g.*, ECF No. 35 (Def.'s Opp. to Pl.'s Mot. for Class Cert.) at 15-16. This is both legally and factually wrong. The Secretary's corporate representative testified that she "believe[s]" Section 3509.03(D)'s Friday deadline for in-person absentee ballot requests has been superseded by a settlement agreement, Ex. 2 (Seskes Dep.) at 36:25-38:4, but that Agreement on its face is limited to situations where the Board must "accept absentee ballots that are *cast at the board in-person*." Settlement Agreement ¶ 10(a), *Ohio State Conference of NAACP v. Husted*, No. 2:14-CV-404 (S.D. Ohio 2015) (ECF No. 111-1) (emphasis added). Mr. Nelson could not have so voted on Saturday given his detention. Nor could Mr. Nelson have had a family member or friend deliver his

Mr. Mays's and Mr. Nelson's injuries are traceable to the Secretary, who is charged with implementing and enforcing Ohio's election laws. And as the Secretary has admitted, Ohio's election laws preclude voters in Mr. Mays' position from exercising the right to vote. Ex. 12 (Def.'s Resp. to Second Set of Requests for Admission) at No. 8 ("Secretary LaRose denies that Ohio law permits persons who are incarcerated after the deadline for absentee ballot applications and who have not yet cast a ballot to vote."). Finally, Mr. Mays's and Mr. Nelson's injuries are redressable by the relief they seek—being extended the same emergency ballot process made available to hospitalized voters, as demonstrated by their successful casting of ballots following this Court's grant of a Temporary Restraining Order, accomplished by a team of Board of Elections officials who visited the Montgomery County Jail where Plaintiffs were being held.

The Court correctly concluded Plaintiffs had standing when it granted their Motion for Temporary Restraining Order, (Temporary Restraining Order) at 1, ECF No. 12 ("For the reasons addressed in Plaintiffs' motion and at the TRO hearing, the Court finds that Named Plaintiffs have standing to bring this action[. . . .]").

## II. Ohio Law Denies Late-Jailed Voters the Fundamental Right to Vote in Violation of the Equal Protection Clause of the Fourteenth Amendment and the First Amendment to the United States Constitution.

The right to vote is a "precious" and "fundamental" right. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966); *see also Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 585 (6th Cir. 2006); *Obama for America v. Husted (OFA)*, 697 F.3d 423, 428 (6th Cir. 2012). Voting rights are particularly important because they are "preservative of all rights." *Yick Wo v.*

---

application by Saturday noon. It is the policy of the Montgomery County Jail to *only* permit detainees to mail absentee ballot requests to the board; they may not have people pick them up for personal delivery. Ex. 9 (Roy Dep.) at 72:13-19. It is thus undisputable that Mr. Nelson had no mechanism to vote after his arrest.

*Hopkins*, 118 U.S. 356, 370 (1886); *see also League of Women Voters of Ohio v. Brunner (LWV)*, 548 F.3d 463, 476 (6th Cir. 2008).

Citizens' voting rights are protected by the First and Fourteenth Amendments. *Stein v. Thomas*, 672 F. App'x 565, 569 (6th Cir. 2016); *Harper*, 383 U.S. at 665. The Equal Protection Clause of the Fourteenth Amendment shields qualified electors from state action that arbitrarily treats voters differently or burdens the right to vote. *OFA*, 697 F.3d at 428–30. Equal Protection applies to both the "initial allocation of the franchise . . . as well [as] to the manner of its exercise." *LWV*, 548 F.3d at 477 (quoting *Bush v. Gore*, 531 U.S. 98, 104–105 (2000)). "[W]here fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined." *Harper*, 383 U.S. at 670. If a state law imposes a "severe" burden on the right to vote, courts must apply strict scrutiny and the law "must be narrowly tailored and advance a compelling state interest." *Michigan State A. Philip Randolph Institute v. Johnson*, 833 F.3d 656, 662 (6th Cir. 2016) (quoting *Green Party of Tenn. V. Hargett*, 791 F.3d 684, 693 (6th Cir. 2015)). "[A] law severely burdens voting rights if the burdened voters have few alternate means of access to the ballot," and such a "law impermissibly restricts 'the availability of political opportunity.'" *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir. 1998) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 793 (1983)).

Ohio law grants individuals convicted of a misdemeanor offense or who are in jail on pending charges the right to vote. Ohio Const. art. V, § 1; Ohio Rev. Code § 3509.08; *Fair Elections*, 770 F.3d at 458. However, Ohio's law and policies do not provide late-jailed electors with any method of exercising that right. Late-jailed voters are denied any "mechanism by which to cast their vote," (Temporary Restraining Order) at 2, ECF No. 12; Ohio Rev. Code § 3509.08.

Defendant has conceded that these electors have no means to receive or cast a ballot, despite having no legal disability affecting their right to vote. Ex. 12 (Def.'s Resp. to Second Set of Requests for Admission) No. 8; Ex. 2 (Seskes Dep.) at 105:8-24, 117:7-112:2; *see also Fair Elections*, 770 F.3d at 458 (finding that Ohio law and practice deprives late-jailed voters of the right to vote).[12]

Because Ohio law categorically and absolutely denies late-jailed voters the ability to vote, the burden on voting rights is severe; therefore, a strict scrutiny analysis is appropriate for determining the constitutionality of Ohio's statutory scheme, which must be narrowly drawn to serve a compelling state interest. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 190 (2008); *Johnson*, 833 F.3d at 662. Ohio has offered no interest whatsoever, let alone a compelling one, in denying eligible voters the right to vote, particularly given the extension of that right to late-hospitalized voters—a much more burdensome administrative task for the State. However, even if analyzed under the less exacting standard articulated by the Supreme Court in *Anderson* and *Burdick*, Ohio's electoral system still runs afoul of the Equal Protection clause by both (a) placing an undue burden on late-jailed voters' right to vote and (b) treating similarly situated voters differently by denying the franchise to one group of "confined" voters while allowing its exercise by another. Under either standard, Ohio's law and policy concerning late-jailed voters violates Plaintiffs' fundamental constitutional right to vote.

A.      **Ohio Law and Policies Place a Severe, Discriminatory, and Arbitrary Burden on the Right to Vote by Denying the Franchise to Electors Detained after 6:00 p.m. the Friday Before an Election and Held in Jail Through Election Day.**

"[S]ince the right to [vote] in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully

---

[12] In *Fair Elections*, the Sixth Circuit held that the organizational plaintiff lacked standing to pursue a challenge to Ohio's denial of the right to vote to late-jailed voters. As explained *supra*, that concern does not arise here, as plaintiffs in the instant case are individual eligible voters.

and meticulously scrutinized." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964); *see also Yick Wo*, 118 U.S. at 370. When a state's classification "severely" burdens the fundamental right to vote, as with poll taxes or instances where the franchise is wholly denied to a class of otherwise eligible voters, strict scrutiny is the appropriate standard. *See Harper*, 383 U.S. at 670 ("We have long been mindful that where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined."). Under strict scrutiny, a restriction on the right to vote will be deemed unconstitutional if it is not "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434.

Here, plaintiffs and other late-jailed Ohio voters—the proposed Plaintiff class—are under no legal disability impeding their right to vote. *See, e.g.*, *Fair Elections*, 770 F.3d at 458 (finding that residents who are detained pre-trial or for a misdemeanor sentence retain the right of suffrage while in jail). Yet, Ohio law and procedure categorically denies *any* means of casting their ballot. At minimum, the First and Fourteenth Amendment prohibit such outright denial of the right to vote.

While states have significant leeway in determining how "the right of suffrage may be exercised," *McDonald v. Bd. of Elections*, 394 U.S. 802, 807 (1969), the Supreme Court has held that eligible voters detained by the state must be provided *some* means of exercising their right to vote. In other words, states can structure voting options in a variety of ways but never in a way that erects an insurmountable obstacle to voting for eligible citizens. The Supreme Court has addressed this principle specifically in the jailed voter context. In *Goosby v. Osser*, the Supreme Court remanded a case about Philadelphia County voters for further proceedings because the voters alleged that "the Pennsylvania statutory scheme absolutely prohibits them from voting." 409 U.S.

26

512. And in *O'Brien v. Skinner*, the Supreme Court applied heightened scrutiny—and struck down a statutory scheme—when "[d]enial of absentee registration and absentee ballots [to detained voters] is an absolute denial of the franchise to" such voters. 414 U.S. 524, 533 (1974); *compare McDonald v. Bd. of Elections*, 394 U.S. at 809 (denying detainee voters' claims where the record did not show that a "pretrial detainee is absolutely prohibited from exercising the franchise"). Of course, some personal private circumstances may prevent an individual from voting in any given election and the state is not required to accommodate every private eventuality. But if the state itself erects the obstacle to voting access—by physically detaining the voter—it must provide alternative means to exercising the right to vote. Here, it cannot "be contended that denial of absentee ballots to [plaintiffs] does not deprive them of their right to vote any more than it deprives others who may 'similarly' find it impracticable to get to the polls on election day; . . .  it is the State which is both physically preventing [plaintiffs] from going to the polls and denying them alternative means of casting their ballots." *O'Brien,* 414 U.S. 524.[13]

Because the Defendant provided late-jailed voters—electors who are registered, and qualified—no ability to request an absentee ballot or vote in person or vote by any other means, *see supra* Facts Section I, the voting restrictions placed on such electors are therefore "so severe as [themselves] to constitute an unconstitutionally onerous burden on the . . . exercise of the franchise." *O'Brien*, 414 U.S. at 530 (internal quotation marks omitted).

Moreover, the burden Ohio law places on the ability of late-jailed voters to exercise their fundamental right to vote is arbitrary and discriminatory. Ohio law already allows late-hospitalized voters to request and cast an absentee ballot on Election Day if the request is received by the

---

[13] Of course, in this case, Ohio provides *more* access to voters facing private obstacles to the ballot than it does to voters facing obstacles imposed by the state.

relevant board of elections by 3:00 p.m. Ohio Rev. Code § 3509.08(B)(1). These late-hospitalized voters can request that the absentee ballot be entrusted to a family member for delivery. Alternatively, if the voter is confined in the county where they are registered, the board must send a two-person team of board employees representing the two major political parties to deliver and return her ballot. *Id.* § 3509.08(B). The fact that such a process exists shows that Ohio's decision to deny late-jailed voters access to the ballot is arbitrary in two ways. First, the absentee voting procedure for late-hospitalized voters shows that the state is able to facilitate voting for individuals who are confined and cannot get to the polls after the absentee ballot request deadline has passed. Second, testimony provided in this case indicates that it would be a relatively easy lift for counties to facilitate voting in jails, and likely significantly less burdensome and time-consuming than it is to process requests and deliver ballots to the more numerous and harder to reach late-hospitalized voters. *See* Section VIII.

The State's denial of the right to vote to late-jailed voters does not fall evenly on all similarly situated persons either. Both Plaintiffs in this case were assigned public defenders, which in Ohio is based upon indigency. *See* Ohio Rev. Code § 120-1-03. Ohio currently operates on a cash bail system. Ohio R. Crim. Pro. 46. The inevitable result of the current scheme for voting in jails and cash bail is a system where the ability to vote hinges on one's ability to pay bail. The Supreme Court has long ago held that "wealth is not germane to one's ability to participate intelligently in the electoral process" and finances should not be a barrier to exercise of the franchise. *Harper* 383 U.S. at 668. The State's failure to provide late-jailed voters access to the ballot is arbitrary, discriminatory, and serves no compelling government interest.

When, as here, a state creates a statutory voting scheme that burdens the ability of some voters to exercise their voting rights, the state's justification must be "sufficiently weighty" to

justify the scheme. *See OFA*, 697 F.3d at 433–34. A "vague interest in the smooth functioning of local boards of elections" is insufficient justification for a scheme that effectively denies the franchise to a class of eligible voters *Id*. at 434; *see also Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986). Administrative inconvenience does not create a compelling state interest to restrict the right to vote, particularly when the restriction results in an outright denial of that right to eligible electors. *See Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627 (1969); *Carrington v. Rash*, 380 U.S. 89, 96 (1965) ("States may not casually deprive a class of individuals of the vote because of some remote administrative benefit to the state."). Indeed, the administrative burden to the state here would be minimal—Ohio already requires county boards of elections to personally deliver ballots to confined voters. Ohio Rev. Code § 3509.08(A). Further, the State has already established a procedure for use by late-hospitalized electors, which could be easily extended to late-jailed electors. *See id.* § 3509.08(B). Ohio has recognized that it has a duty to facilitate the provision of ballots to late-hospitalized electors. There is no justification for preventing late-jailed electors from using that same procedure to cast their ballots as well— especially when such voters' inability to vote in-person on Election Day is due to restrictions imposed by the state itself in confining eligible voters, most of whom have been convicted of no crime and are presumed innocent of the charges against them.

> **B.    Even If This Court Finds that Ohio Law Does Not Severely Burden the Ability of Late-Jailed Voters to Exercise Their Fundamental Right to Vote, It Should Hold that Ohio Law Places an Undue Burden on Plaintiffs' Right to Vote and Violates Equal Protection.**

Even if this court does not find that Ohio's total denial of the vote to late-jailed voters *severely* burdens Plaintiffs' right to vote, it is nonetheless clear that Ohio law and policies place an *undue* burden on Plaintiffs' right to vote in violation of the First and Fourteenth Amendments under an *Anderson-Burdick* balancing test.

In cases where plaintiffs allege a state law has burdened their voting rights through disparate treatment but the burden is neither severe nor non-existent, a court will review the claim using the "flexible standard" set out by the Supreme Court in *Anderson*, 460 U.S. 780, and *Burdick*, 504 U.S. 428. *See, e.g.*, *Hunter*, 635 F.3d at 238 (applying *Anderson-Burdick* balancing in an equal protection challenge to the counting of provisional ballots); *Crawford*, 553 U.S. at 204 (Scalia, J., concurring.) ("To evaluate a law respecting the right to vote—whether it governs voter qualifications, candidate selection, or the voting process—we use the approach set out in *Burdick* . . . ."). Under the *Anderson-Burdick* standard:

> A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiffs' rights."

*Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789)).

Here, as previously stated, the injury Plaintiffs seek to vindicate is the outright denial of the franchise to an entire class of eligible voters. Late-jailed voters are by definition unable to satisfy Ohio's absentee ballot law and have no other available means to exercise their right to vote. Ex. 2 (Seskes Dep.) at 105:21-24; *Fair Elections*, 770 F.3d at 458. Yet, the burden on the state to provide late-jailed voters access to the franchise is minimal. The state already has in place the procedures that would allow late-jailed voters to participate on Election Day in Section 3509.08(B)(1) of the Ohio Revised Code and through Secretary of State directives implementing other federal law. Ohio Sec'y of State Directive 2017-06 (April 25, 2017). For the other "confined elector[s]" under Ohio law—late-hospitalized voters, including those with a disability—the state has created an exception to the general absentee ballot cutoff to ensure they are enfranchised on Election Day. *Id.* At this point, the state's procedure for providing absentee ballots to late-

hospitalized voters is well established in Ohio—it has been in place for at least ten years and has

not been difficult to undertake. And as county officials who are tasked with jail and hospital voting

have testified, it is significantly less burdensome to conduct jail voting that hospital voting. *E.g.*,

Ex. 5 (Royer Dep.) at 68:9-15, 83:12-84:22 (testifying that jail voting involves one-fifteenth the

number of voters, one-eleventh the number of hours, and one-twelfth the number of site visits in

Franklin County). Indeed, the testimony reflects that if the same emergency ballot access were

extended to late-jailed voters, it would merely result in the same jail voting process, conducted by

the same staffers, happening on Election Day rather than earlier. Ex. 5 (Royer Dep.) at 74:7-75:4,

82:25-83:11. At most, it may involve the need to hire a few additional temporary workers on

Election Day. Ex. 14 (Poland Dep.) at 40:15-25. There is no reason to believe providing the ballot

to late-jailed voters would be prohibitively difficult to undertake given the state's decade-long

ability to provide late-hospitalized voters access to the franchise.[14] In fact, in mapping the

geographic distributions of boards of elections, hospitals, and jails in Ohio and calculating and

comparing the distances from each county's jails and hospitals to the county's board of elections,

Plaintiff's Expert, Dr. Salling, found that distances from "[boards of elections] to jails in the same

---

[14] The Secretary claims that Ohio law prohibits the state's eighty-eight boards of elections from accepting absentee ballot applications after the statutory deadline and delivering absentee ballots to voters in jail. Ex. 2 (Seskes Dep.) at 195:11-196:7. However, Ohio recently made last minute accommodations for voters with disabilities that required boards diverge from the absentee ballot procedures established under Ohio law. Under Ohio law, late-hospitalized voters may only be delivered absentee ballots by members of a board of elections when they are confined in a hospital in the county in which they are registered. Ohio Rev. Code § 3509.08(B)(2). In order to ensure compliance with the Americans with Disabilities Act, the Secretary issued a Directive that permits boards of elections to personally deliver absentee ballots to late-hospitalized voters with disabilities who are confined in a hospital outside the county in which they are registered. Ex. 11, Ohio Sec'y of State Directive 2017-06 (April 25, 2017); Ex. 2 (Seskes Dep.) at 137:21-138:6. Issuing a directive requiring Ohio's boards of elections to accept absentee ballot applications and ballots from late-jailed voters after the statutory deadline should similarly be within the Secretary of State's authority. Although Ohio may be more amenable to vindicating the rights of individuals who experience unforeseeable hospitalization or live with a disability, the state is no less required to vindicate the rights of eligible electors who experience detention.

county in Ohio are essentially the same as distances to hospitals in those counties." Ex. 1 (Salling Report) at 1-2. Moreover, "assuming that all hospitals and jails in this study have equal chances of having eligible voters who have not voted, the relative burden of travel to these facilities is likely less for jails since there are many fewer of them and the aggregate distance to be covered is less." *Id.* at 2.

Even assuming rational basis review, there is simply no rational way to justify Ohio law and procedure's outright denial of the vote to late-jailed voters when it is clear that Ohio already has the procedures and policies in place that would allow these eligible voters to cast a ballot— and when in fact similar procedures allowed the Named Plaintiffs in this case to cast ballots without difficulty. *See* Ex. 10 (Cavender Dep.) at 15:17-16 (the jail was able to take Named Plaintiffs to vote, the voting process was completed, and everything was returned to the Montgomery County Board of Elections within approximately 30 minutes). There is no way to justify Ohio's denial of the right to vote to late-jailed voters under any of the possible standards of review.

C. **Ohio Law Arbitrarily Distinguishes Between Similarly Situated Voters by Ensuring the Right to Vote for Late-Hospitalized Voters, but Not for Late-Jailed Voters, in Violation of the Equal Protection Clause.**

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." This command is one the Supreme Court has interpreted to require that all persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982); *League of Women Voters v. Brunner*, 548 F.3d 463, 477 (6th Cir. 2008) (*quoting Bush*, 531 U.S. at 104-05 (2000)) ("The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."). "Any unjustified

discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government." *Kramer v. Union Free School Dist.*, 395 U.S. 621, 626 (1969). Ohio considers hospitalized and jailed electors "confined" electors for purposes of its absentee voting rules and regulations. *See, e.g.*, Ohio Rev. Code § 3509.08. Persons who are late-hospitalized are similarly situated in all material aspects to late-jailed voters—both groups are composed of (1) eligible electors residing in Ohio; (2) who wish to cast a ballot on Election Day; but (3) experience unforeseen circumstances after the absentee ballot deadline has passed that prevent them from making it to the polls to cast a ballot. Ohio law nevertheless treats the two groups differently. Late-hospitalized voters can request and cast an absentee ballot on Election Day under Ohio law, and are provided access to their ballot by the county in which they are hospitalized, if they are hospitalized outside their residence. *Id.* § 3509.08(B)(1); Ex. 2 (Seskes Dep.) at 137:21-138:6. Yet, Ohio law does not permit late-jailed voters the same right.

Even though Ohio law classifies both hospitalized and jailed eligible Ohio voters as "confined" electors for purposes of its absentee voting rules and regulations, the two groups are treated differently when it comes to ballot access. Because the State of Ohio has chosen to treat similarly situated voters differently—providing the ballot to late-hospitalized voters but refusing to provide the same applicable procedure to enfranchise late-jailed voters—Ohio law and procedure violates the Equal Protection Clause of the Fourteenth Amendment.

### D. The Late-Hospitalized Voter Procedure Already in Place Provides a Model Remedy.

In this case, all that Plaintiffs seek on behalf of the Plaintiff Class is an equal opportunity to cast a ballot to similarly situated Ohio voters that cannot appear at the polls because of late hospitalization. If this Court finds that the Plaintiff Class members are entitled to an opportunity

to cast a ballot notwithstanding their pre-trial or misdemeanor detention (which are not disqualifying), Plaintiffs propose that the Court order additional briefing on the proper remedial order. This would give Defendant LaRose the opportunity to provide input on his preferred method of providing equal access to the vote in jails. *See, e.g.*, *Int'l Fidelity Ins. Co. v. Vimas Painting Co., Inc.*, No. 2:07-cv-298, 2009 WL 2243769, at *9 (S.D. Ohio Jul. 23, 2009) (directing the parties to submit supplemental briefing on appropriate remedies); *Hill v. Snyder*, 821 F.3d 763, 767 (6th Cir. 2016) (noting that the District Court "directed the parties to provide supplemental briefing addressing the procedures that the court may equitably put in place"). After all, access to voting in jail could be accomplished through a mix of methods, including the establishment of vote centers in at least the larger jail facilities. Ex. 2 (Seskes Dep.) at 42:5-43:13 (testifying that Ohio has "ballot-on-demand" printers and e-pollbooks, both of which sync with the county voter registration center, allowing officials to check eligibility of a voter and print the appropriate ballot on demand).

But while a remedial phase would give Defendant LaRose maximum flexibility, the Court should not be concerned about the feasibility of fashioning a remedy in this case. The procedures already in place for late-hospitalized voters and jailed voters allow for an easy fix to this serious problem.

First, as discussed above, Ohio law requires county election officials to accept absentee ballot applications from late-hospitalized voters up until 3:00 p.m. on Election Day. Ohio Rev. Code § 3509.08(B). Thus, county election officials already have well-oiled processes in place for processing absentee ballot applications received on Election Day through 3:00 p.m. and sending teams into the community to deliver them. Ex. 2 (Seskes Dep.) at 130:6-133:14 (confirming that "for at least the past ten years boards of elections have regularly delivered ballots to hospitals

across the state on Election Day" and no election officials have sought the removal of this requirement from Ohio law).[15]

Second, election officials already have—or should have—systems in place for visiting the jails in each county to assist detained voters in casting absentee ballots (if their applications are received prior to the deadline). Some county election officials conduct their jail visits on the Monday before Election Day. Ex. 14 (Poland Dep.) at 31:11-13 ("We send bipartisan teams to the jail on Monday, the day before election day, to vote those voters."). In Franklin County, during the time when the voting program has been conducted in the jail, no correctional officers have complained about it being too much work or disruptive to transport detainees to cast ballots when the Board of Elections arrives to administer them, and jail officials are not aware of any difficulties or security incidents while the Board of Elections is on site. Doc. 20 (Saxon Dep.) at 76:23-81:6. Thus, all that would be required to enable a remedy for late-jailed voters is allowing such voters to submit an absentee ballot application until 3:00 P.M. on Election Day and transferring the day on which ballots are delivered to late-jailed voters to Election Day. *See* Ex. 5 (Royer Dep.) at 74:7-75:4.

The evidence of this simple remedy to this serious problem is already in the record. In 2014, this Court ordered Secretary Husted to make absentee voting available to late-jailed voters. *Fair Elections Ohio v. Husted*, 47 F. Supp. 3d 607, 617 (S.D. Ohio, Sep. 16, 2014). Shortly thereafter, on October 15, 2014, Secretary Husted issued a directive to the boards of elections instructing them to accept absentee ballot applications from late-jailed electors through 3:00 P.M. on Election Day and deliver those ballots either through two-person staff teams from the board of

---

[15] County election officials also process in-person applications to vote early at the Board of Elections through 2 p.m. on Monday before Election Day. Ex. 32 (Ohio Secretary of State, Election Official Manual (Mar. 22, 2019)), at 5-5–5-7.

elections or a family member. *See* Ex. 26 (Ohio Sec'y of State Directive 2014-33 (Oct. 15, 2014). In other words, Secretary Husted extended the late-hospitalized voter policy to late-jailed voters. Secretary Husted developed a special absentee ballot application to be used for late-jailed voters. *See* Ex. 27 (Form 11-C). While this policy was not fully implemented because of an emergency appeal and adverse ruling on standing from the Sixth Circuit, *see* Ex. 28 (Ohio Sec'y of State Directive 2014-35 (Oct. 28, 2014) (rescinding prior directive)), neither the Secretary's witness nor any Boards of Election employees recalled any significant concerns from election officials about its implementation in the run up to the 2014 election. *See, e.g.*, Ex. 2 (Seskes Dep.) at 182:22-183:2, 197:3-15; Ex. 13 (Smith Dep.) at 51:4-52:3; Ex. 22 (Kelly Dep.) at 57:19-59:7.

Indeed, Form No. 11-C as drafted by Secretary Husted in 2014 is an appropriate starting point for any remedy in this case. It requires late-jailed voters to affirm that they are "confined in the county jail due to an unforeseeable arrest occurring before the election," allows submission of these applications through 3:00 P.M. on Election Day, and allows ballots to be delivered through two-person election official teams or through a family member. Ex. 27 (Ohio Sec'y of State Form 11-C (2014)). This system is easily administrable, relies upon the same verification under penalty of perjury as the late-hospitalized voter process, and provides access for all late-jailed voters whose incarceration makes it impossible for them to turn in an absentee ballot application on time or appear in-person to vote. It will provide a remedy not only for those arrested after the 6:00 P.M. Friday deadline but also those arrested slightly prior to the deadline but with insufficient time to turn in an application. This is particularly important given the lack of access to resources and voting information currently observed in Ohio's jails. *See supra* Fact Sections V-VII.

Of course, a new application and deadline for absentee voting for late-jailed voters is only a meaningful remedy if late-jailed voters know about it. Unfortunately, the Secretary has not issued

any guidance or education regarding how to ensure that late-jailed voters are provided meaningful access to the absentee ballot procedures. *See supra* Section VII. And, as discussed above, information in Ohio jails is severely restricted to the resources the jails themselves make available. *Id*. As such, the appropriate remedy in this case should require the Secretary to issue a directive requiring boards of elections to coordinate with the jails within their jurisdiction to: (1) provide a sufficient supply of voter registration forms and regular and late-jailed absentee ballot applications to be distributed to those in jail custody, (2) coordinate the delivery of absentee ballot applications to the boards of elections through 3:00 P.M. on Election Day via email, fax, or other electronic means, and (3) coordinate for the delivery of absentee ballots to Ohio jails on Election Day. Secretary LaRose should also be directed to: create an informational notice about voting options while in jail, disseminate the notice to all Ohio jails for posting in a central location along with a memoranda explaining all ordered changes in election procedures to jail officials, and circulate the notice to all boards of elections. Secretary LaRose should also be directed to designate a member of his election staff to be specifically responsible for overseeing and responding to questions regarding jail voting issues. Finally, Secretary LaRose should be directed to make training available to jail staff and election officials regarding access to voting in jails. These minor changes to Ohio's electoral procedures will make little difference in election officials' operations but will be the difference between a right to vote on paper and a right to vote in reality for thousands of Ohio citizens.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be granted.

Dated: July 22, 2019

Mark P. Gaber*
Danielle M. Lang*
Jonathan M. Diaz*
CAMPAIGN LEGAL CENTER
1411 K St. NW, Ste. 1400
Washington, DC, 20005
(202) 736-2200
mgaber@campaignlegalcenter.org
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org

Locke E. Bowman*
Alexa Van Brunt*
Laura C. Bishop*
RODERICK AND SOLANGE MACARTHUR
JUSTICE CENTER
NORTHWESTERN PRITZKER SCHOOL OF
LAW
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-1271
l-bowman@law.northwestern.edu
a-vanbrunt@law.northwestern.edu
laura.bishop@law.northwestern.edu

Respectfully submitted,

*/s/ Naila S. Awan*
Naila S. Awan, Trial Attorney (0088147)
Kathryn C. Sadasivan*
DĒMOS
80 Broad Street, 4th Floor
New York, NY 10004
(212) 485-6065
nawan@demos.org
ksadasivan@demos.org

Chiraag Bains*†
DĒMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001
(202) 864-2746
cbains@demos.org

*Attorneys for Plaintiffs*

*admitted pro hac vice
†admitted to practice only in Massachusetts;
practice limited pursuant to D.C. App. R. 49(c)(3)*

## CERTIFICATE OF SERVICE

The foregoing Motion for Summary Judgment and Memorandum of Law in Support was filed this 22nd day of July, 2019 through the Court's Electronic Filing System. Parties will be served, and may obtain copies electronically, through the operation of the Electronic Filing System.

*/s/ Naila S. Awan*
Naila S. Awan (0088147)
