**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO,
EASTERN DIVISION**

| | | |
|---|---|---|
| TOMMY RAY MAYS, II, *et al.*, | : | |
| | : | |
| Petitioners, | : | Case No. 2:18-cv-1376 |
| | : | |
| v. | : | JUDGE WATSON |
| | : | |
| FRANK LAROSE, in his official capacity as | : | MAGISTRATE JUDGE VASCURA |
| Secretary of State of Ohio, | : | |
| | : | |
| Defendant. | : | |

---

### DEFENDANT SECRETARY OF STATE FRANK LAROSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

Because Plaintiffs have not shown entitlement to relief, their motion for summary judgment must be denied. Defendant Secretary of State Frank LaRose's opposition to Plaintiffs' motion for summary judgment is more fully set forth in the attached memorandum in support.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*s/ Julie M. Pfeiffer*

JULIE M. PFEIFFER (0069762) *
  * *Trial Attorney*
BRIDGET C. COONTZ (0072919)
ANN YACKSHAW (0090623)
JEFFREY J. BOUCHER (0092374)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 466-2872; Fax: (614) 728-7592
Julie.Pfeiffer@OhioAttorneyGeneral.gov
Bridget.Coontz@OhioAttorneyGeneral.gov
Ann.Yackshaw@OhioAttorneyGeneral.gov
Jeffrey.Boucher@OhioAttorneyGeneral.gov

*Counsel for Defendant Ohio Secretary of State*

<u>**MEMORANDUM IN SUPPORT**</u>

**INTRODUCTION**

"[P]roblematic at best, and prohibited at worst." *Ne. Ohio Coal. for the Homeless v. Husted (NEOCH)*, 837 F.3d 612, 631 (6th Cir. 2016). This is how the Sixth Circuit described Plaintiffs' theory why Ohio's deadline for requesting absentee ballots is unconstitutional. Plaintiffs ask the Court to view this case with narrow blinders on—to ignore the statutory scheme that gives Ohio citizens ample voting opportunities and to home in on one group of uniquely situated voters during the three-day stretch of time between the absentee-ballot-request deadline and Election Day. The Sixth Circuit has been clear about this litigation tactic: "[z]eroing in on the abnormal burden experienced by a small group of voters is problematic at best, and prohibited at worst." *Id.* Plaintiffs simply cannot justify this blinkered approach, and their motion for summary judgment as to the constitutionality of Ohio's ballot-request deadline must be denied.

Elections would be impossible to administer without deadlines, and it goes without saying that election-related deadlines affect many Ohio voters, sometimes for the worse. A voter stuck out of town or suddenly stricken by an illness is impacted by the absentee-ballot deadline just as keenly as the narrow group of late-jailed individuals Plaintiffs purport to represent here. Yet, Plaintiffs do not seek relief for these voters. Instead, Plaintiffs seek to secure an exception for *one* group of people affected by the absentee-ballot deadline—late-jailed individuals. According to Plaintiffs, these late-jailed individuals—and seemingly they alone—are similar enough to unforeseeably hospitalized voters that the Election Day deadline exception for the latter should apply to the former. But jails are not hospitals, and Plaintiffs' equal protection claim therefore never leaves the ground.

1

But Plaintiffs do not stop at equal protection—they seek *greater* protection for jailed individuals than any other group receives under Ohio law.  Plaintiffs ask for an injunction forcing the Secretary to create an educational campaign solely for incarcerated voters and to coordinate with Ohio's jails on that campaign, as well as voter registration and absentee-ballot supply and pickup.  Any entitlement to such relief is pure fantasy.  First, Plaintiffs' Complaint is silent on these issues, and Plaintiffs cannot amend their Complaint by way of summary judgment.  Second, the Secretary has no authority over Ohio's jails and could neither implement nor enforce the voter-outreach efforts Plaintiffs seek here.  The Court should deny Plaintiffs' motion for summary judgment and reject Plaintiffs' proposed injunction.

**I.     Under the *Anderson-Burdick* framework, the State's interest in the ballot-request deadline justifies any slight burden on voting.**

Plaintiffs fail to give a fulsome explanation of the appropriate standard in this case, summarily concluding that strict scrutiny must apply under the applicable case law.  Pl's Mtn. at 24, Doc. 55 at PageID 2127 (citing *Mich. St. A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656, 662 (6th Cir. 2016); *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir. 1998)).  The cases cited by Plaintiffs, however, applied the *Anderson-Burdick* balancing test.  *See Mich. APRI*, 833 F.3d at 662 ("We apply the framework established by the Supreme Court in *Burdick* . . . and *Anderson* . . . to evaluate Equal Protection Clause challenges to voting restrictions." (citations omitted)); *Citizens for Legislative Choice*, 144 F.3d at 920-21 (same).  Under this approach, courts do not determine the appropriate level of scrutiny until they first evaluate the "character and magnitude" of the burden on voting rights.  *See Mich. APRI*, 833 F.3d at 662 ("Under the *Anderson-Burdick* test, the court must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." (citation and quotation marks omitted)); *Citizens for Legislative*

*Choice*, 144 F.3d at 921 (same).  Only then does a court evaluate the State's interests and balance those interests against the burden on voting.  *See id.*

In other words, Plaintiffs cannot begin by summarily concluding that strict scrutiny applies.  *See* Pl's Mtn. 23-25, Doc. 55 at PageID 2126-28.  Before invoking that standard, Plaintiffs must first demonstrate a severe burden on the right to vote.  This, Plaintiffs cannot do.  Plaintiffs overemphasize the deadline's burden on voters by analyzing the burden solely from the perspective of voters confined after the deadline's expiration.  At the same time, Plaintiffs understate Ohio's interest in the deadline, seemingly arguing that nothing less than administrative impossibility can justify *any* absentee-ballot-request deadline before Election Day.  Plaintiffs can only claim entitlement to relief by overweighting one side of the *Anderson-Burdick* scale and underweighting the other.

### A. By limiting their analysis to jailed voters who have already missed the ballot-request deadline, Plaintiffs artificially increase the deadline's burden on voting.

Plaintiffs overstate the ballot-request deadline's burden by focusing on a narrow group of late-jailed voters, and even then, only after the deadline has lapsed.  This blinkered approach leads Plaintiffs to conclude—more than a dozen times—that Ohio law completely prohibits late-jailed individuals from voting.  *See, e.g.*, Pl's Mtn. at 25, Doc. 55 at PageID 2128 ("Because Ohio law categorically and absolutely denies late-jailed voters the ability to vote, the burden on voting rights is severe . . . .").  By characterizing the ballot-request deadline as a total ban on voting, Plaintiffs conclude that the burden is severe.  But such statements misunderstand the appropriate legal framework for evaluating election-related burdens.  Applying the correct framework, it becomes clear that the ballot-request deadline's burden is much slighter than that represented by Plaintiffs.

**1.** **Plaintiffs misapprehend the legal framework for evaluating burdens in the election context.**

In calculating the ballot-request deadline's burden on voting, Plaintiffs do exactly what the Sixth Circuit cautions election plaintiffs not to do—they zero in on the Plaintiffs' peculiar circumstances. *NEOCH*, 837 F.3d at 631 ("Zeroing in on the abnormal burden experienced by a small group of voters is problematic at best, and prohibited at worst."); *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 197 (2008) (plurality opinion) ("Burdens . . . arising from life's vagaries, however, are neither so serious nor so frequent as to raise" constitutional questions.). By confining their analysis to individuals jailed the weekend before Election Day, Plaintiffs ignore the deadline's effect on voters generally and also overlook the pre-incarceration voting opportunities available for late-jailed individuals. Plaintiffs ask the Court to consider the burden on voting at the end point only, *i.e.*, after the deadline lapses.

Plaintiffs do not point to any case law that supports this end-point approach to burden weighing. And in fact, cases applying the *Anderson-Burdick* framework have avoided this approach, taking a holistic view of burdens flowing from election regulations. In *Burdick*, for example, both parties agreed that the plaintiff would not be able to vote for his preferred candidate, who missed certain ballot-access deadlines. *Burdick v. Takushi*, 504 U.S. 428, 430 (1992). The bar was absolute. Despite this, the Court deemed Hawaii's ballot-access provisions constitutional, finding that, holistically, the system provided "easy access to the ballot." *Id.* at 436. Only by allowing certain ballot-access deadlines to pass him by did plaintiff find himself unable to vote for his preferred candidate.

Similarly, in *Rosario v. Rockefeller*, 410 U.S. 752 (1973), the Supreme Court refused to implement the end-point approach urged by Plaintiffs here. In that case, New York law required a voter "to enroll in the party of his choice at least 30 days before the general election in

4

November in order to vote in the next subsequent party primary." *Id*. at 754. The plaintiffs failed to enroll prior to the cutoff date, which barred them from participating in the 1972 primary election. Plaintiffs challenged the deadline, stating that it denied them their right to vote. *Id*. at 756. From plaintiffs' perspective, of course, this was true—missing the registration deadline locked them out of the 1972 primary. But the Court nonetheless found the statute constitutional, rejecting the plaintiffs' end-point, post-deadline framing of the registration deadline as a ban on voting. At bottom, the statute "merely imposed a time deadline." *Id*. at 757. Because plaintiffs could have enrolled by the statutory deadline, the Court concluded that plaintiffs' disenfranchisement, "if their plight can be characterized as disenfranchisement at all, [was caused by] their own failure to take timely steps to effect their enrollment." *Id*. at 758. Moreover, the Court concluded that the deadline, though far in advance of the primary, was itself constitutional. *Id*. at 762.

The burden on voting caused by the absentee-ballot deadline surely feels severe to one who—like Plaintiffs—already missed the deadline. But as these cases illustrate, courts should not weigh the burden felt by a particular group of voters *after* they missed an election-related deadline. Accordingly, this Court should not assess the burden of the ballot-request deadline by zeroing in plaintiffs arrested after the deadline. "[P]roblematic at best, and prohibited at worst," this end-point, plaintiff-specific view essentially ensures that the burden will always be severe. *NEOCH*, 837 F.3d at 631. Only by taking a holistic and systemic view can the Court appropriately weigh a deadline's burden.

### 2. Plaintiffs fail to account for the various voting opportunities that are—in fact—open to them.

Viewed systemically, Ohio law does not ban late-jailed individuals from voting. In fact, Ohio law extends the exact same absentee-ballot rules to late-jailed individuals as it does to

every other Ohio citizen.  For presidential elections, both jailed individuals and other Ohio citizens can request a mail-in absentee ballot beginning January 1.  *See* Ohio Election Official Manual, Doc. 55-34 at PageID 3009, 3014-15.  And both jailed individuals and other Ohio voters must submit those requests no later than noon on the Saturday before the election.  Ohio Rev. Code §§ 3509.03, 3509.08.

Additionally, late-jailed individuals, like any other Ohio citizen, can elect to vote early in person.  Plaintiffs Mays and Nelson could have voted in person on any of the following days before their arrest: October 10, 11, 12, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26, 27, 29, 30, 31, November 1, 2, or 3 (for Plaintiff Mays only).  *See* Election Official Manual, Doc. 55-34, at PageID 3011-12 (describing the early voting days for gubernatorial elections).  Plaintiffs' assertion that Ohio "categorically and absolutely" denies late-jailed voters the ability to vote is therefore categorically and absolutely false.

These opportunities to vote distinguish the facts of this case from the absentee-ballot cases cited by Plaintiffs.  *See* Pl's Mtn. at 26-27, Doc. 55 at PageID 2129-30 (citing *Goosby v. Osser*, 409 U.S. 512 (1973); *O'Brien v. Skinner*, 414 U.S. 524 (1974)).  In *O'Brien*, for example, inmates could neither register nor vote while incarcerated if they were incarcerated in their home counties.  414 U.S. at 525-27.  The state laws blocked these inmates from voting, while permitting inmates jailed outside their home counties to register and vote.  *Id*.  Under these circumstances, the Court concluded that the state's laws unconstitutionally and invidiously "discriminate[d] between categories of qualified voters."  *Id*. at 530.[1]  Moreover, the Court

---

[1] Contrary to Plaintiffs' assertion, the majority in *O'Brien* did not hold that the state must provide inmates with alternative means to exercising the right to vote when the state is "physically preventing [plaintiffs] from going to the polls."  Pl's Mtn. at 27, Doc. 55 at PageID 2130 (purporting to quote *O'Brien*, 414 U.S. at 524).  This language comes from *O'Brien*'s concurring opinion, *see* 414 U.S. at 533 (Marshall, J., concurring), while the majority opinion

concluded that inmates incarcerated in their own counties "are simply not allowed to use the absentee ballot and are denied any alternative means of casting their vote." *Id*. And in *Goosby*, the laws of Pennsylvania similarly prevented incarcerated individuals from registering to vote and from voting in person or by absentee ballot. 409 U.S. at 513-14.

Unlike the plaintiffs in *O'Brien* and *Goosby*, incarcerated individuals can vote in Ohio. Here, Plaintiffs could have requested that an absentee ballot be mailed to them. In fact, the Secretary sent absentee-ballot applications to every registered voter in Ohio. *See* Ohio Secretary of State Directive 2018-18. Plaintiffs could have voted an absentee ballot in person on any one of twenty days in the month before Election Day, including some weekends. Additionally, unlike *O'Brien* and *Goosby*, where the relevant state laws explicitly banned inmates from the franchise, Ohio law sets forth a specific procedure by which inmates can request and cast ballots. *See* Ohio Rev. Code § 3509.08(A). And nothing in *O'Brien* or *Goosby* suggests that states cannot impose deadlines on such procedures. Factually, this case simply does not present the sort of insuperable bars present in *O'Brien* or *Goosby*.

**B.** **Ohio's interest in an absentee-ballot deadline exceeds mere convenience; the deadline enables the boards of elections to complete their required Election Day duties.**

Just as Plaintiffs enlarge the ballot-request deadline's effect on voting, Plaintiffs also minimize the State's interest in that deadline, hoping to swing the *Anderson-Burdick* balance in their favor. In his motion for summary judgment, the Secretary explained that the ballot-request deadline enables the boards to transition from processing absentee-ballot applications to completing Election Day tasks. *See* SOS Mtn. at 23-29, Doc. 54 at PageID 2056. But Plaintiffs claim that Ohio's interest amounts to no more than mere convenience. Plaintiffs also argue that

---

never suggested that states have a constitutional duty to provide inmates with special voting rules.

their proposed remedy—an Election Day ballot-request deadline for jailed individuals—is feasible and must be adopted here. The easy availability of this alternative, according to Plaintiffs, shows the weakness of the State's interest in the deadline. These arguments both fail.

        **1.**    **The deadline for requesting absentee ballots serves more than a vague interest in smooth elections.**

Plaintiffs skew the *Anderson-Burdick* balancing by setting Ohio's regulatory interests little higher than nil. Plaintiffs characterize Ohio's interest in its ballot-request deadline as no more than a "vague interest in the smooth functioning of the local boards of elections." Pl's Mtn. at 29, Doc. 55 at PageID 2132. And the mere administrative convenience gained through the deadline, Plaintiffs assert, cannot justify the deadline's effect on voters. *Id.* (citing *Obama for Am. v. Husted*, 697 F.3d 423, 433-34 (6th Cir. 2012); *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627 (1969); *Carrington v. Rash*, 380 U.S. 89 (1965)). But these cases do not support a finding that Ohio's interest in its ballot-request deadline is the type of vague convenience those courts found constitutionally insufficient to support state election regulations.

For example, in *Obama for America*, Ohio's boards administered early in-person voting the Saturday, Sunday, and Monday preceding Election Day for several years. 697 F.3d at 433. When Ohio sought to eliminate the final three days of in-person voting, it claimed that boards needed this time to prepare for Election Day voting. *Id.* at 432-33. But the court found the record devoid of any evidence that boards had struggled to cope with the final three days of in-person voting. Without any concrete evidence, the court deemed Ohio's interest in eliminating those days just the "vague interest in the smooth functioning of local boards of elections."[2] *Id.* at 434.

---

[2] The other cases cited by Plaintiffs are less applicable than *Obama for America*. *Kramer*, for instance, involved a statutory scheme that only permitted voters who owned property or had school-age children to vote in school-district elections. 395 U.S. at 622. In

Here, of course, the boards have *never* attempted to administer Election Day voting for all late-incarcerated individuals.  And testimony in the record establishes that the boards cannot administer Election Day voting for jailed individuals with current staffing and resource levels.  Doc. 52-2, Poland Dep. 45:20-46:10; *see also Ohio Democratic Party v. Husted*, 834 F.3d 620, 634 n.8 (6th Cir. 2016) ("Fiscal responsibility, even if only incrementally served, is undeniably a legitimate and reasonable legislative purpose.").  This, coupled with the evidence detailing the many tasks election officials must complete in the days before and on Election Day, show that Ohio's interest in the ballot-request deadline exceeds mere convenience.  *See* SOS Mtn. at 23-29, Doc. 54 at 2056; *see also Ohio Democratic Party*, 834 F.3d at 635 (crediting the state's interest in "reducing the administrative strain" on boards).  The deadline permits boards to complete the tasks necessary for a successful election.

> **2.** **Plaintiffs fail to support their assertion that the proposed relief would be workable.**

Finally, because the Secretary could "easily" adopt Plaintiffs' proposed Election Day deadline, Plaintiffs claim that Ohio's interest in the deadline is weak.  Specifically, Plaintiffs assert that because "[t]here is no reason to believe providing the ballot to late-jailed voters would be prohibitively difficult to undertake," the boards must do so.  Pl's Mtn. at 31, Doc. 55 at 2134.  But Plaintiffs cannot support their workability claim with any evidence other than rank speculation, their own say-so, and a 2014 directive adopting the Election Day deadline for late-jailed individuals, which was drafted in response to the *Fair Elections* litigation and never went into effect for an election.  *See* Pl's Mtn. at 35-36, Doc. 55 at PageID 2138-39; Directive 2014-

---

*Kramer*, the State attempted to justify this exclusion by arguing that property owners and parents were "directly affected" by the school district's decision.  *Id.* at 631.  Administrative convenience played no role.  Likewise, in *Carrington*, Texas's stated interest in its law preventing members of the armed forces from voting in Texas was not administrative convenience but preventing electoral takeovers by transients who would overwhelm local communities.  380 U.S. at 93.

33, Doc. 55-28.  Further, Plaintiffs are simply incorrect that the boards must implement their proposed remedy if it is possible to do so.

Plaintiffs incorrectly assert that election officials would have little to no difficulty in implementing an Election Day deadline for jailed individuals.  Certainly, some officials testified that the boards would, as they must, follow Ohio law if it required the boards to extend the 3:00 p.m. Election Day deadline for requesting ballots to jailed voters.  *See* Pl's Mtn. at 31, Doc. 55 at 2134 (citing Doc. 55-7, Royer Dep. 74:7-75:4).  But those board officials never opined that such an extension would be easy, workable, or feasible under current staffing and resource levels. Indeed, board officials stressed the difficulty of complying with the current Election Day deadline for unforeseeably hospitalized voters.  *See, e.g.*, Doc. 52-3, Smith Dep. 53:21 (noting that hospitals are "very difficult" to cover on Election Day).  That these boards could easily or even feasibly adopt an Election Day deadline for jailed voters is pure speculation by Plaintiffs. *See Allen v. Wal-Mart Stores, Inc.*, 602 F. App'x 617, 621 (6th Cir. 2015) ("[Plaintiff] cannot survive summary judgment through speculation or conjecture.").

Plaintiffs also insist that the Secretary could easily implement Directive 2014-33 as a possible remedy in this case, relying on the fact that "neither the Secretary's witness nor any Boards of Election employees recalled any significant concerns from election officials about its implementation."  Pl's Mtn. at 36, Doc. 55 at PageID 2139.  But of course, Directive 2014-33 is a nullity.  No election was held under Directive 2014-33.  No Board implemented Directive 2014-33.  The directive existed for just thirteen days, *see Fair Elections Ohio v. Husted*, 770 F.3d 456 (6th Cir. 2014), during which time the boards only tentatively discussed it. *See, e.g.*, Doc. 52-2, Poland Dep. 45:13-46:10 (noting that the board had done nothing other than communicate internally before the directive was rescinded); Doc. 52-6, Kelly Dep. 58:7-59:7

10

(same).  Relying on Directive 2014-33's brief existence to show that Plaintiffs' proposed remedy is "easily administrable" is akin to deeming a city's flood preparedness wholly effective because a projected storm never hit.  *See Allen*, 602 F. App'x at 621 (rejecting speculation as a basis for summary judgment).

In any event, the Secretary need not show that the statute is indispensable or that Plaintiffs' proposed remedy would be unworkable to justify its interest in maintaining the ballot-request deadline.  "The Constitution does not require states to prove that every component of every election regulation is indispensably necessary to avoid either an election catastrophe or an absolute impossibility of performance."  *Diaz v. Cobb*, 541 F. Supp. 2d 1319, 1332 (S.D. Fla. 2008).  The State has shown that its ballot-request deadline assists the boards in completing all the tasks they need to complete by the end of Election Day.  It need not make the elevated showing that Plaintiffs—not the law—seem to require.

## II.    Plaintiffs' equal protection claim likewise fails as late jailed voters are not similarly situated to those facing an unforeseen hospitalization.

Plaintiffs' equal protection argument fails because late-jailed voters are not similarly situated to unforeseeably hospitalized voters.  Relying on Ohio Revised Code § 3509.08(B), which applies to voters facing unforeseen medical emergencies, Plaintiffs argue that jailed voters should receive the same exception.  This argument falls short.  Equal protection does not require all groups to be treated the same; rather, equal protection prohibits different treatment for persons "who are in all relevant respects alike."  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  Here, the two groups are not alike and need not be treated the same.

Plaintiffs' analysis as to why late-jailed voters and those facing unforeseen medical emergencies are similarly situated suffers from a fundamental flaw.  That is, Plaintiffs transform *one* similarity between the groups—that both "experience unforeseen circumstances"—into a

conclusion that the two groups are similarly situated in *all* material aspects. Pl's Mtn. at 33, Doc 55 at PageID 2136. As discussed previously, SOS Mtn. at 36-38, Doc. 54 at PageID 2056, this is simply untrue. Hospitals are open facilities that provide medical services to patients who are free to leave at any time. In contrast, Ohio jails are secure facilities holding those with a pending criminal case or individuals serving a local jail sentence. The county Sheriff oversees all aspects of these secure facilities. Ohio Rev. Code § 341.01. These stark differences mean that jails lack the flexibility conducive to last-minute absentee voting.

Plaintiffs' argument that a late-jailed voter is similarly situated to an unforeseeably hospitalized voter lacks any factual basis. In fact, Plaintiffs' brief highlights many of the differences between the two. At length, Plaintiffs discuss many of the restrictions placed on an inmate while incarcerated. Pl's Mtn. at 16-17, Doc. 55 at PageID 2119-2120. Those jailed in Ohio are not only limited in their use of internet access, but providing improper internet access to inmates is a criminal offense. Ohio Rev. Code § 341.42. As Plaintiffs point out, inmates need calling cards to make a phone call and may receive visitors only under strict limitations. Pl's Mtn. at 16-17, Doc. 55 at PageID 2119-2120. Plaintiffs acknowledge that even the booking process can last several hours up to a day. *Id*. These restrictions—necessary to ensure the safety inmates and staff—emphasize the regulated and controlled environment that is jail. As a result, county boards of elections have significantly less access to those confined in jail compared to those admitted to a hospital. Plaintiffs' own brief underscores many of the reasons why Ohio treats jailed voters differently than hospitalized voters and likewise demonstrates why their equal protection claim fails.

Beyond asking for equal protection, Plaintiffs instead ask for greater protection. Under Ohio law, those confined in jail must obey the same deadlines as all eligible voters in Ohio.

Ohio Rev. Code § 3509.08(A) simply provides an additional means of ballot delivery for those who are facing personal illness, physical disability, or infirmity or are confined in jail. Plaintiffs take issue with the lack of information provided to jailed voters and to the false idea that absentee-ballot applications are not provided to jailed voters[3]. Pl's Mtn. at 11, 13, Doc. 55 at PageID 2114, 2116. Plaintiffs make broad requests for an information campaign and distribution of absentee ballot applications. *Id.* at 37, Doc. 55 at PageID 2140. In short, Plaintiffs seek preferential treatment. Neither unforeseeably hospitalized voters nor any other disabled or confined elector (e.g., those in nursing homes) receive additional absentee ballot applications—other than applications sent to *all* registered voters in major elections—or widespread informational campaigns. And in any event, the Secretary cannot force jails to display absentee-ballot information or stock certain quantities of ballot applications.

In considering Plaintiffs' equal protection claim[4], the Court must remember that neither hospitalized voters facing medical emergencies nor jailed voters are a suspect class. Thus, rational basis review applies. *See, e.g., Bailey v. Callaghan*, 715 F.3d 956, 960 (6th Cir. 2013). Under this deferential standard, the Court must presume the law's validity; consider any conceivable basis for the law; refrain from courtroom factfinding; and allow for rational speculation and imperfect generalizations. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-16 (1993); *Heller v. Doe*, 509 U.S. 312, 319-21 (1993). Here, given the unique concerns that jails present in administering absentee voting, Ohio lawmakers' decision to treat jailed voters

---

[3] Plaintiffs acknowledge immediately after this assertion that the Secretary sends absentee ballot applications to *all* registered voters for major elections. Pl's Mtn. at 11, 13, Doc. 55 at PageID 2114, 2116.

[4] The Sixth Circuit has suggested that, in analyzing challenges to voting regulations, "two strands are part of the same equal protection analysis." *Obama for America*, 697 F.3d at 432. One strand involves weighing the burden on voting rights against the State's interests, normally invoking *Anderson-Burdick* balancing (addressed above). *Id.* The other strand considers whether a voting law improperly classifies voters, typically involving rational basis review. *Id.*

differently from hospitalized voters (and the same as all other voters) lies within their legislative discretion. Ohio is not alone in making this determination—many other states offer a similar unforeseen hospitalization exception without a corresponding exception for late-jailed individuals. *See, e.g.*, Ala. Code § 17-11-3; Conn. Gen. Stat. § 9-150c; Ga. Code. Ann. § 21-2-384(a)(4); Ind. Code Ann. § 3-11-4-1; Iowa Code § 53.22(3); Ky. Rev. Stat. Ann. § 117.077; Mass. Gen. Laws ch. 54, § 89; Minn. Stat. § 203B.04(2); Mont. Code Ann. § 13-13-211(2); N.C. Gen. Stat. 163A-1308(b); 25 Pa. Cons. Stat. § 3146.2(e); S.C. Code Ann. § 7-15-330; S.D. Codified Laws § 12-19-2.1; Tenn. Code Ann. § 2-6-401(a); Utah Code Ann. § 20A-3-306.5; Va. Code Ann. § 24.2-705; Wis. Stat. § 6.86(3).

**III.** **Plaintiffs failed to plead their claim of a constitutional violation based on alleged bad acts by various governmental employees.**

For the first time in their Motion for Summary Judgment, Plaintiffs attempt to paint Ohio's election process, in general, as a broken, wholly deficient system, driven by misinformed and misguided employees who possess neither the resources nor the gumption to secure the voting rights of jailed voters. *See* Pl's Mtn. at 12-20, Doc. 55 at 2115-23. Plaintiffs now argue that, notwithstanding Ohio Revised Code § 3509.08, they and other inmates were denied access to voting in jail because of allegedly deficient policies, procedures and customs in Ohio jails and at the county boards of elections. For example, Plaintiffs complain that, during their incarceration in the Montgomery County Jail, no officer discussed voting opportunities with Nelson and that no one offered him an absentee ballot application or other material to educate him on his right to vote. Pl's Mtn. at 7, Doc. 55 at PageID 2110. Similarly, Plaintiffs argue that Mays never received satisfactory answers when he asked about voting. *Id.* at 5, PageID 2108. Finally, Plaintiffs state that neither Mays nor Nelson had access to visitors, the internet, telephone calling cards, or absentee ballot applications. *Id.* at 7, 11, PageID 2110, 2114.

Plaintiffs also argue that jail employees generally are misinformed about jailed voter laws, county board of elections employees are poorly trained, jail mail policies and processes cause inherent delays, and access to information and communication resources in general are "very limited" or inaccurate. *Id.* at 12-16, PageID 2115-19.

Plaintiffs seem to argue that all of these deficiencies together form a policy or custom that illegally interfered with (and ostensibly will continue to interfere with) their and the proposed class members' right to vote. In fact, in a footnote, Plaintiffs speculate that, due to these alleged systemic deficiencies, the proposed class "is likely even larger" because "*in practice* even those arrested days prior to the absentee ballot request deadline *would likely* have a difficult time requesting and casting a ballot." Pl's Mtn. at 8-9 n.5, Doc. 55 at PageID 2111-12 (emphasis added).

This Court should ignore Plaintiffs' arguments directed to any supposed policies or customs in Ohio jails.[5] First, Plaintiffs are flat wrong that a policy of disenfranchisement exists. Plaintiffs wildly extrapolate the testimony of a few board of elections and jail employees to attempt to establish an illegal policy or custom by the Secretary of State. The bar for establishing such claims lies much higher.[6] More importantly, however, Plaintiffs included no such claim in their complaint and are foreclosed from even advancing it at the summary judgment stage.

---

[5] Past election plaintiffs attempted to assert claims based on the alleged county-to-county chaos in enforcing election laws. *See, e.g.*, *NEOCH*, 837 F.3d at 635-36. Because the Secretary provides "clear prescriptive statewide rules that apply equally to all voters," courts have turned back such claims. *Id*. at 636.

[6]      A claim of governmental liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision or custom promulgated by the entity or its agent(s). *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). Parties may not raise new claims at the summary judgment phase. *Tucker v. Union of Needletrades, Indus., & Textile Emps.,* 407 F.3d 784, 788 (6th Cir. 2005) (citing *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004)). "To permit a plaintiff to do otherwise would subject defendants to unfair surprise." *Id.* "[E]ven under the liberal notice-pleading regime, the Federal Rules of Civil Procedure still require that the complaint give the defendant fair notice of the claim and its supporting facts." *Id.* (quoting *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 854 (6th Cir. 2001))).

Plaintiffs' Complaint only challenges the constitutionality of Ohio Revised Code § 3509.08. In that vein, Plaintiffs narrowly define the proposed class as:

> All individuals arrested and held in detention in Ohio on or after close of business for the county election board on the Friday prior to the Election who (1) are eligible to vote in Ohio and are registered to do so, (2) did not vote in person or by mail prior to their detention, (3) were provided neither an absentee ballot nor transportation to a voting center nor access to any other method of voting while held in detention, and (4) will remain in detention through close of polls on Election Day.

Compl. ¶ 44, Doc. 1 at PageID 9. The gravamen of the Plaintiffs' Complaint is that Ohio Revised Code § 3509.08 absolutely bars this class of late-jailed individuals from voting on Election Day no matter what. *See* Compl. ¶¶ 1, 28, 34, 38, 39-43, Doc. 1 at PageID 1, 6-9. Plaintiffs' Complaint does not challenge an illegal policy or custom of disenfranchising jailed voters *before* the absentee-ballot deadline. In fact, anyone who struggled to vote under

---

supervision; (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess v. Fischer,* 735 F.3d 462, 478 (6th Cir. 2013).

§ 3509.08 because of a jail's misleading instructions or undue delay in processing mail would *by definition* fall outside the proposed class, which comprises individuals arrested after § 3509.08's deadline.

Plaintiffs' sole claim is that Ohio's deadline for absentee-ballot requests is unconstitutional. Accordingly, to the extent Plaintiffs advance a new constitutional claim under an illegal policy or custom theory, Plaintiffs should be foreclosed from any recovery.

**IV.    Plaintiffs fail to establish the need for broad injunctive relief.**

Finally, Plaintiffs urge the Court to fashion a broad, sweeping injunction, including (1) the reintroduction of Directive 2014-33, which extends the 3:00 p.m. Election Day absentee-ballot deadline to late-jailed individuals, (2) supplying voter registration forms and absentee-ballot applications to jailed individuals, (3) mandatory coordination between the boards and jails to deliver and pick up absentee ballots and ballot applications, (4) the creation of an educational campaign for jailed voters, (5) election training for jail officials, and (6) a jailed-voter liaison position at the Secretary's office. Pl's Mtn. at 35-37, Doc. 55 at PageID 2138-2140. This relief is overbroad on its face and must be rejected. In seeking this relief, Plaintiffs assume that the Secretary of State has wide control over county boards of elections and Ohio's jails. Nothing could be further from the truth.

The Secretary of State is the chief election officer of Ohio whose powers and duties are statutorily defined. *See* Ohio Rev. Code §§ 3501.04 (Chief Election Officer); 3501.05 (duties and powers). The Secretary's powers and duties do not include oversight over Ohio's jails. *Compare id.* (describing the Secretary's powers and omitting any mention of county jails), *with* Ohio Rev. Code § 341.01 (giving the county sheriff "charge of the county jail and all persons confined therein"). The Secretary has no authority to force jails to coordinate with boards of elections to provide voter registration forms or absentee ballot applications. *See* Ohio Rev. Code §

17

3501.05(S)-(T) (giving the Secretary statutory authority to distribute voter registration forms at specified locations, none of which include county jails). Nor does the Secretary have statutory authority to direct jails to post an informational notice about voting opportunities in a central location within the jail. *See generally* Ohio Rev. Code § 3501.05. And while the Secretary could in theory present election trainings to jail employees, nothing in the Secretary's power could compel their attendance. *See id.* Plaintiffs' requested relief clearly exceeds the statutory authority given to the Secretary of State, and the Court should not entertain Plaintiffs' broad request for injunction.

Nor should the Court accept Plaintiff's invitation to micromanage the relationship between the Secretary, the boards of elections, and jails. *See Ohio Democratic Party*, 834 F.3d at 622. Ohio's county boards of elections are also "bodies separate from the Secretary of State, with their own statutory powers and duties, including responsibilities that require the exercise of discretion." *See* 2005 Ohio AG LEXIS 11 *22; 2005 Ohio Op. Atty Gen. No. 6; Ohio Rev. Code § 3501.11 (duties and powers of county boards of election). The Secretary of State may issues directives to the boards of elections, Ohio Rev. Code §§ 3501.05(B), 3501.053, and has authority to remove board of election employees for "neglect of duty, malfeasance, misfeasance, or nonfeasance in office, for any willful violation of Title 35 of the Revised Code, or for any other good and sufficient cause." Ohio Rev. Code § 3501.16.  But boards maintain wide discretion.

 Indeed, county boards of election were established on a county basis so that they could tailor their decisions and actions to the needs of individual counties. *See State ex rel. City of N. Olmstead v. Cuyahoga Cty. Bd. of Elections,* 93 Ohio St.3d 529, 533, 757 N.E.2d 314 (2001) (Boards of elections are the local authorities that are best equipped to gauge compliance with election laws.). Boards, not this Court, are best equipped to deal in "the minutiae of state election

processes," like registration and ballot collection, voter education, and training. *Ohio Democratic Party*, 834 F.3d at 622.

The Court need look no further than *Fair Elections* as authority for rejecting Plaintiffs' proposed relief. In that case, the district court ordered only the most meager, straightforward portion of the relief sough here: extension of the Election Day absentee-ballot deadline to late-jailed individuals. *See Fair Elections Ohio v. Husted*, 47 F. Supp. 3d 607, 617 (S.D. Ohio 2014) ("Accordingly the Court GRANTS Plaintiffs' Motion for Summary Judgment (doc. 110) to the extent that it ENJOINS Defendants from treating late-jailed electors any differently from late-hospitalized electors."). But even that relief was overbroad according to the Sixth Circuit. In reversing the trial court's ruling, the Sixth Circuit noted that "the district court's constitutional analysis does not appear sufficient to warrant the injunction." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459 (6th Cir. 2014). This Court should summarily reject Plaintiffs' attempt to secure even broader relief than what was deemed overly broad in *Fair Elections*.

## CONCLUSION

For these reasons, Secretary LaRose requests that the Court deny Plaintiffs' motion for summary judgment.

Respectfully submitted,
DAVE YOST
Ohio Attorney General

*s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762) *
   * *Trial Attorney*
BRIDGET C. COONTZ (0072919)
ANN YACKSHAW (0090623)
JEFFREY J. BOUCHER (0092374)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215

Tel: (614) 466-2872; Fax: (614) 728-7592
Julie.Pfeiffer@OhioAttorneyGeneral.gov
Bridget.Coontz@OhioAttorneyGeneral.gov
Ann.Yackshaw@OhioAttorneyGeneral.gov
Jeffrey.Boucher@OhioAttorneyGeneral.gov

*Counsel for Defendant Ohio Secretary of State*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2019, the foregoing was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*s/ Julie M. Pfeiffer*

JULIE M. PFEIFFER (0069762) *
Assistant Attorney General