UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Tommy Ray Mays, II, *et al.*,

    Plaintiffs,

v.

Jon Husted,

    Defendant.

Case No. 2:18-cv-1376

Judge Michael H. Watson

Magistrate Judge Vascura

## ORDER

On November 6, 2019, the Court granted Plaintiff's motion for summary judgment, denied Defendant's motion for summary judgment, enjoined Defendant from imposing a different deadline for the delivery of absentee ballot applications for Class members than for hospital-confined voters, and ordered Defendant to direct Ohio's various boards of elections to apply the hospital-confined deadline to Class members. Op. and Order, ECF No. 70. Defendant appealed, Notice of Appeal, ECF No. 72, and moves the Court to stay enforcement of its Opinion and Order pending the outcome of that appeal. Mot. Stay, ECF No. 73. The Sixth Circuit has recently denied Defendant's motion for a stay, and for the following reasons, this Court does the same.

### I.    STANDARD OF REVIEW

In analyzing a motion to stay, the Court considers four factors: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay;

(3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Schmitt v. Ohio Sec. of State*, No. 2:18-cv-966, 2019 WL 1243016, at *1 (S.D. Ohio Mar. 18, 2019) (quoting *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006)). These factors are not prerequisites for granting a stay but are rather "interconnected considerations" for the Court to balance. *Id.*

## II.  ANALYSIS

First, although Defendant repeatedly asserts that the Court failed to consider his argument concerning administrative burdens, the Court considered all arguments raised by Defendant. Defendant focused on the need for a deadline, generally, and argues that the State's interests justify having a deadline for submitting absentee ballots. As the Court stated in its Opinion and Order, *if* this law was a generally applicable one, a straightforward *Anderson-Burdick* analysis would apply, and Defendant very well may win based on that argument. The Court chose not to determine whether Defendant's interests justify the burden on the Class's voting rights in a vacuum under the straightforward *Anderson-Burdick* analysis, however, because there was no need to. No matter how much Defendant attempts to sidestep the issue, the fact is that this law is not generally applicable. It treats one group of voters more favorably than the Class—and, in that differing treatment, burdens the voting rights of the Class. Because of that, Defendant must justify the *differing treatment* and corresponding burden on voting rights in addition to justifying the general need for an absentee

ballot deadline and the general burden on voting rights that any deadline imposes. The Court's Opinion and Order concluded that Defendant failed to justify the State's *differing treatment* of the two classes of voters, and, as such, found that the law violates the Equal Protection Clause. In so finding, the Court concluded that administrative burdens would likely satisfy a traditional *Anderson-Burdick* analysis and justify having a generally applicable deadline but cannot, alone, also justify the State's choice to grant more favorable voting rights to one group of confined voters to the detriment of the voting rights of a similarly situated group of confined voters. Op. and Order 35–37, ECF No. 70. Regardless of whether Defendant ultimately prevails on appeal, he is incorrect in arguing that the Court failed to address his argument.

The Court likewise previously considered and rejected Defendant's argument that hospital-confined and jail-confined voters are not similarly situated in the relevant respects. *Id.* at 38–43.

Because Defendant merely repackages the same arguments in his motion for a stay that were presented—and fully considered—on summary judgment, he has failed to convince the Court that its Opinion and Order was incorrect and that he is likely to prevail on appeal.

Under the second and third factors, while it is true that Defendant will be irreparably harmed absent a stay, *see Maryland v. King*, 133 S. Ct. 1, 3 (2012) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (internal

quotation marks and citation omitted)), the third factor offsets any harm to Defendant as Plaintiffs will be harmed if the Court grants the stay. *See Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote . . . constitutes irreparable injury." (citation omitted)). The Court has concluded that Ohio's statute burdens Plaintiffs' fundamental right to vote and violates their right to Equal Protection of the laws. This is thus a "situation in which irreparable harm will befall one side or the other of the dispute no matter what [the Court] do[es]." *Granholm*, 473 F.3d at 252.

Defendant's flip assertion that people who anticipate becoming Class members prior to the next election can simply vote early before they are arrested both: (1) misunderstands the fact that no Class member can anticipate being arrested and detained through the election any more than one can plan on emergency hospitalization—if they could, they would not be Class members;[1] and (2) shows a remarkable disregard for the value of the votes of Class members—all of whom are presumed innocent even as they are deprived of their right to vote.[2] One could just as callously say that those who anticipate being confined to a hospital through Election Day should vote prior to their admission to the hospital. Such a statement would, of course, be absurd, and it is just as absurd when directed at the individuals who comprise the Class in this case.

---

[1] Indeed, this inability to foresee confinement is one of the reasons Class members are similarly situated to hospital-confined voters.

[2] This disregard was raised in the summary judgment briefing when Defendant referred to hospital-confined voters as "particularly worthy" of a special deadline, as if any person's vote is of more value than another's. Def. Mot. Summ. J. 35, ECF No. 54.

The relatively small, solely pecuniary, burden that would be imposed on the State to comply with the Court's injunction pales in comparison to the potential that Class members' fundamental voting rights will continue to be unconstitutionally burdened by the State's unequal treatment of two similarly situated voting groups. When viewed in this context, it is clear upon whom the burden should lie pending resolution of the appeal in this case. *See Obama for Am.*, 697 F.3d at 436–37 ("The burden on Ohio voters' ability to cast ballots . . . outweighs any corresponding burden on the State, which has not shown that local boards will be unable to cope with three extra days of in-person early voting . . . . While states have a strong interest in their ability to enforce state election law requirements, the public has a strong interest in exercising the fundamental political right to vote." (internal quotation marks and citations omitted)). Thus, despite the irreparable harm Defendant faces if the Court denies his request for a stay, this factor "does not strongly favor one party or another." *See Granholm*, 473 F.3d at 252.

Fourth, the public interest weighs in favor of denying the stay. Defendant cites cases for the proposition that an injunction that wrongly bars the State from conducting elections pursuant to one of its statutes irreparably harms the State's citizens. But, as addressed above, the Court is not wrongly enjoining the State from doing anything. Rather, it is the State that is in the wrong. As just noted, the public has an interest in ensuring that similarly situated voters are not unconstitutionally treated differently and that Ohio's legislature does not cherry

pick one group of favored voters and offer them the right to vote on more favorable terms than the remainder of the similarly situated voting population. See Martin-Marietta Corp. v. Bendix Corp., 690 F.2d 558, 568 (6th Cir. 1982) ("[I]t is in the public interest not to perpetuate the unconstitutional application of a statute."). Furthermore, the State is not being prohibited from conducting its elections at all. Instead, it is being ordered to ensure similarly situated voters have equal access to those elections. As the Sixth Circuit has held, "[t]he public interest therefore favors permitting as many qualified voters to vote as possible." Obama for Am., 697 F.3d at 437. The injunction is in the public interest.

Thus, on balance, the factors weigh against granting the stay. In reaching this conclusion, the Court is mindful that election law is complex, and the United States Court of Appeals for the Sixth Circuit may very well ultimately disagree with this Court's analysis of the issues. Because this Court has found none of the factors warrant a stay, however, the Court believes the better course is to **DENY** Defendant's motion.

**IT IS SO ORDERED.**

                                                                                                    *[signature]*
                                                                                MICHAEL H. WATSON, JUDGE
                                                                                UNITED STATES DISTRICT COURT